30 U.S. 304 (____)
5 Pet. 304
MARIA WILSON PAGE, RELICT AND ADMINISTRATRIX OF MANN PAGE, DECEASED, MANN ALEXANDER PAGE AND JANE MARIA PAGE, INFANT CHILDREN OF THE SAID MANN PAGE, BY THE SAID MARIA WILSON PAGE, THEIR MOTHER AND NEXT FRIEND, COMPLAINANTS,
vs.
JOHN LLOYD, EXECUTOR OF OSGOOD HANBURY, WHO WAS SURVIVING PARTNER OF CAPEL AND OSGOOD HANBURY, ROBERT PATTON, ADMINISTRATOR WITH THE WILL ANNEXED OF MANN PAGE, DECEASED, JOHN T. PAGE, LEWIS BURWELL, ADMINISTRATOR OF ROBERT C. PAGE AND JOHN MINOR, DEFENDANTS.
Supreme Court of United States.

*305 The case was argued by Mr Key and Mr Wirt, for the complainants: Mr Patton read a written argument prepared by Mr Johnston.
Mr Justice M'LEAN delivered the opinion of the Court.
This cause is certified from the eastern district of the circuit court in Virginia, the judges of that court being divided in opinion.
The legal question arose out of the following facts, which are substantially stated by the defendant's counsel. Mann Page the second, having made his will, died in 1803, leaving a large estate, real and personal, the whole being charged with the payment of his debts.
The words in the will are, "I do hereby subject all my estate, both real and personal, to the payment of my debts, and full power is given to my executors to sell and convey all or any part thereof, which in their discretion they shall deem it most expedient to dispose of for that purpose."
To his wife he gave a life estate in a part of his farm called Mansfield; and the residue of it he bequeathed, in fee simple, to his two sons Robert and Mann.
He devised three several parcels of real estate, and, with the exception of his plate, all his personal property, to his executors, to be "by them applied, in the first place, to the payment of his debts, and the balance, if any, to be divided among his three sons." His daughters were provided for in the will, and the support and education of his children were charged upon his whole estate.
The testator, at his death, owed to Robert Patton three thousand five hundred and fifty-seven pounds twelve shillings and nine pence, which debt was secured by a deed of trust, on the Mansfield estate, dated the 12th of July 1799, bearing interest from the date. He also owed other debts to a large amount, which bound his real estate.
As the executors appointed by the will refused to act, Patton took out letters of administration, with the will annexed, *306 in October 1803, and gave sureties for the performance of his duties.
In 1804 he made sales of the personal property on a credit of twelve months; with the exception of certain sums which were required to be paid down. The devisees of the real estate took possession of it. That part which was devised to the executors seems not to have been in a condition to be sold.
Up to the year 1810, the administrator received, at different times, various sums of money from the personal assets, and made disbursements in payment of debts and expenses, for the support and education of the family, and in advance to legatees.
During this period he kept his administration account in a book provided for that purpose, in which his receipts and disbursements were entered; but the debt due to him, from the estate, or the interest on it, was not brought into the account.
In 1810 he furnished to his counsel the items of his account, and requested him to put it into proper form, and to introduce the deed of trust, "as he might think proper."
A statement of the account was made, under the direction of the counsel, in which the first item of the debit was the principal and interest of the above debt. This account balanced annually makes the administrator creditor, at the end of 1803, the sum of five thousand seven hundred and forty-six pounds twelve shillings and seven pence; at the close of 1810, of the sum of two thousand nine hundred and eighty-nine pounds twelve shillings and eleven pence; and the lowest annual balance exhibited in his favour was, at the end of 1807, two thousand and ninety-six pounds and six pence half-penny. In the account he did not credit the estate with the amount of sales, but with the amount of collections only.
Creditors Lloyd, &c. who had liens on the real estate, brought suits against the administrator and devisees; a sale of the Mansfield estate was ordered, and a receiver appointed.
In this state of things, in June 1810, the plaintiffs, who are the administratrix, widow and children of Mann Page, the devisor, called Mann Page the second, brought this suit against Robert Patton, administrator, and other representatives of Mann Page the second, to have a settlement of the administration account, and a distribution of the surplus. In their bill they allege that the administrator had received the personal *307 assets of the testator, and mixed them with his own: and among other things complain of his attempting to pay himself the annual interest upon his debt, after omitting it in the account which he had kept of the administration.
The administrator answered in March 1811, exhibiting with his answer the account made out under the direction of his counsel, and which included the deed of trust.
He admits that he sold "the personal property, and proceeded to pay the debts due from the estate, which he may not have paid, according to their dignity; as he was advised the whole real estate, which was more than sufficient to pay the debts, was chargeable with them."
On the 7th June 1811, in the case of Lloyd, &c. vs. Patton et al. there was a consent decree, directing "the commissioner of sales, out of the first instalment, which would fall due on the 1st of August, to pay costs and charges, and distribute the balance among Robert Patton and others, in the order of priority of their liens; limiting the payment to Patton, whose balance is unsettled, to any sum that the commissioner and William C. Williams might agree on; and taking from him a receipt, submitting himself to any order the court may in future make, for refunding any part of the same." In the same cause, on the 1st June 1812, the former receiver being dead, the court made an order appointing Patton the receiver of the court, to collect the money remaining unpaid arising from the sale of the estate, called Mansfield, directing the purchasers to pay to him the purchase money as it fell due, and directing him to apply the money so received, in the payment of his testator's debts, according to their dignity.
Afterwards, in the same year, Patton made a report to the court showing that of the second instalment of the purchase money, he had received several sums, amounting together to sixteen thousand nine hundred and fifty dollars and eighty cents. That prior to his appointment as receiver, he had received from the former receiver, the sum of two thousand three hundred and thirty-three dollars and thirty-three cents, on account of the balance reported due to him, on his accounts as administrator; and "which balance arose principally from a deed of trust given to him by Mann Page in his life time, on his Mansfield estate, to secure a debt then due, and which *308 left a balance due the administrator of ____ dollars, which he retained out of the money received by him as above stated." He also stated, that there were several debts due from the sales of the personal estate, which were in a train of collection." There having been reports made of the administration accounts, exceptions were taken; the first and fifteenth of which it may be proper to notice.
In the first is stated the ground, on which the plaintiffs insist that the principal and interest of the debt secured by the deed of trust ought not to be introduced into the account, as was done by Patton, under direction of his counsel in 1810, but ought to be excluded from the account, because it had been excluded in the administration account kept by Patton in his book.
The fifteenth contains an objection to the manner in which interest is charged, and alleges in support of that objection, that the administrator received and mixed the money of the estate with his own. The account, with the exceptions, was recommitted in June 1813, and commissioner Nicholsen made a report in the year 1815, crediting the interest on the debt due by the deed of trust, reporting the principal still due, and Patton indebted as administrator three hundred and seventy-five pounds thirteen shillings and three pence.
In November 1815, an order was made for directing payments by the receiver, and further accounts. A report was made in pursuance of this order, stating Patton to be creditor as administrator to the amount of fifty-seven pounds twelve shillings and five pence.
In 1820 another order was made in both causes, directing a further payment by the receiver, and further accounts to be taken.
Commissioner Barton, in September 1825, made a report in obedience to this order, in which he states that the defendant Patton contends that he has now the right to debit his testator's estate, in the account of his administration, with the amount of his deed of trust on the Mansfield property.
The plaintiffs object to this charge, and insist, that "although the right to charge the personal assets with this debt once existed, it has been forfeited; not only from the neglect to exercise it, but by his election to charge it on the funds derived from the sale of the identical property, upon which there was a lien to secure it."
*309 The commissioner, not undertaking to decide the question thus raised, presented two statements to the court.
In the first he placed the principal of the deed of trust, together with the interest from December 1814, to the credit of the receiver. In the second the same sum was carried as a credit to the administrator.
Upon the argument of this question, the judges of the circuit court being divided in opinion, it was adjourned to this court for their decision.
Shall the credit be given to the administrator or receiver.
The counsel for the complainants insist, that as a specific lien was given on the Mansfield estate, by the deed of trust, that the proceeds of the sale of that estate were more properly applicable to the payment of the debt than the legal assets. In answer to this it may be said, that although the testator charged his real as well as personal estate with the payment of his debts, yet, it was the duty of the administrator, first to apply the legal assets to this purpose. The fact, that the debt in controversy was secured by a lien, does in no respect alter the principle. It seems to have been the design of the testator to secure to his devisees the Mansfield estate, at least until his other property had been exhausted in the payment of debts.
The legal assets, under the Virginia statute, are required to be first applied in the payment of debts, according to their different degrees. This is in conformity to the principle of the common law, and applies as well to debts secured by mortgage as to others.
The facts in the case, it is contended, conclusively show that the deed of trust was not paid by Patton out of the administration fund, but out of moneys received from a sale of the real estate.
The manner in which his administration account was kept; the interest on the deed of trust, which was charged to this account by the commissioner, under the direction of Patton; the decree of 1811, which directed the receiver to make a payment to him and others, according to the dignity of their claims; the acknowledgment under his own hand, in his report as receiver, in 1812, of having received from the former receiver between two and three thousand dollars, and that he retained the remaining *310 balance due him, out of moneys then in his hands as receiver, which balance arose principally from the deed of trust: all prove that the deed of trust was principally, if not entirely, paid out of the funds in the hands of the receiver.
It is insisted that the facts also show a determination by Patton to give a preference, in payments, to other debts and to look to a sale of the Mansfield estate for the satisfaction of his deed of trust. That having made his election, or application of the funds in his hands as administrator, it is now too late, as it was in 1810, to change his purpose. That a change might be productive of great embarrassment and consequent injury, by shifting the interests and responsibilities of parties. Several authorities are cited under this head. 4 Cranch, 326. 7 Wheaton, 13. 6 Cranch, 28. 9 Wheaton, 730. 1 Washington, 128.
In a case where the right of applying payments existed and was exercised by either a debtor or creditor, and notice given, no change can be made in the credit, except by the consent of both parties.
On the part of the defendant it is contended, that it being the duty of the administrator first to apply the legal assets in the payment of debts, he cannot by refusing to do so, throw the burthen of payment on the real estate. That the consent of the devisees, of which there is no evidence in the present case, cannot authorize the administrator to take any steps which the law does not sanction, and thereby make his securities responsible.
If any agreement were made between the administrator and the devisees, that the real estate should be sold for the payment of the above debt, instead of applying the legal assets, it is insisted that such a proceeding would be governed by the contract; and, consequently, the sureties of the administrator could not be held responsible. That the fund would be considered as left in the hands of Patton, under the new agreement, as an individual, and not as administrator; and for which he could only be responsible in his private capacity. That for this sum, thus withdrawn from the administrator, the administration fund must be credited.
If such an arrangement had been made with the devisees, it might be difficult to come to this conclusion. How any *311 agreement with them could affect the claims of creditors, on the legal assets, and the eventual responsibility of the sureties of the administrator for a failure in his duty, it is difficult to understand.
The facts of the case show that the sale of the Mansfield estate was necessary. It was sold under a decree of a court of chancery, obtained by the creditors of the estate, and the application of the proceeds was made by the court. In that suit the proceedings of the administrator were fully investigated. All the items of his account were examined by the court, or by a commissioner under its authority.
From this examination it appeared to the satisfaction of the court, that to satisfy specific liens on the estate, and other debts, its sale was indispensable; and it was decreed to be sold.
The testator by his will not only subjected his real estate, without reservation to the payment of his debts; but he placed it in the hands of his executors to be sold at their discretion. Patton was administrator, with the will annexed, and could exercise all the powers of an executor.
That a sale by him of the real estate would have been valid, even before the personal assets were exhausted, will not, perhaps, be denied.
But it is insisted, that the doctrine of election does not apply to this case; that as administrator, Patton had a right to retain the amount of his own debt, out of the personal assets and that it was extinguished so soon as personal assets to that amount came into his hands: that this effect is produced by operation of law, and requires no sanction or election by the administrator. His right being thus fixed, it is contended that he cannot wave it to the injury of his securities.
This point is urged with earnestness and ability by the defendant's counsel, and a number of authorities are referred to in support of it. Toller's Law of Executors, 295; 1 Com. Dig. 476; 3 Bac. 10; 3 Bl. Com. 18; 1 Salk. 299, are cited. Blackstone lays down the doctrine of retainer, as "a remedy by mere operation of law, and grounded upon this reason, that the executor cannot without an apparent absurdity commence a suit against himself; but having the whole in his hands, so much as is sufficient to answer his demand is by operation of law applied to that particular purpose."
*312 This doctrine is sanctioned in all the cases referred to, and is believed to be no where controverted. But this right of retainer must be exercised under certain restrictions. The executor or administrator cannot discharge his own debt in preference to others of superior dignity; though he may give the preference to his own over others of equal degree. In some of the states, this rule would not apply, as there is no difference made in the payment of debts between a bond and simple contract.
In the case of Warkford vs. Warkford, cited from 1 Salk. Parnell, justice, said, "there would be a great diversity where the obligee makes the obligor executor, and where the obligor makes the obligee executor, for in this last case the debt is not extinct, but only upon supposal, that the executor has assets; but in case of failure of assets, the executor may sue the heir. Indeed where the executor has assets, the debt is gone, but that is because he may retain and pay himself. Not where a personal action was suspended, by the act of the party, it could never be revived."
Holt, chief justice, in the same case said, "If the obligor make the obligee, or the executor of the obligee, his executor, this alone is no extinguishment, though there be the same hand to receive and pay; but if the executor has assets of the obligor, it is an extinguishment, because then it is within the rule that the person who is to receive the money is the person who ought to pay it; but if he has no assets, then he is not the person that ought to pay, though he is the person that is to receive it; and to that purpose is the case of 11 Hen. IV, 83, and the case of Dorchester vs. Webb, 1 Cro. 372.
In the case reported in Hobart, page 10, the court say, when the obligor makes the executrix of the obligee his executrix, the action is at least suspended and then the rule is, that a personal action once suspended is extinct; but the other reason is the surer, that when assets were left the debt was presently satisfied by way of retainer, and consequently no new action can be had for that debt.
The case of Woodward vs. Lord Darcy, reported in 1 Plowden's Rep. is cited. In that case the court say, that the reason why the action is lost for ever is, because in judgment of law he is satisfied before, for if the executor has as much goods in *313 his hands as his own debt amounts to, the property in these goods is altered and vested in himself; that is, he has them as his own proper goods, in satisfaction of the debt, and not as executor; so that there is a transmutation of property by the operation of law, without suit and execution; for inasmuch as Windham here could not have an action against himself as executor, the operation of law is equivalent to a recovery and execution for him; and the property is as strongly altered as it could be by recovery and execution.
If the creditor appoint the debtor his executor, in some cases, it operates as a release of the debt. This, however, is not the case as against creditors; though the release is good against devisees, where the debt due has not been specifically devised.
On these authorities it is contended, that the debt of Patton was extinguished as early as the year 1804, he having received personal assets to the amount of it, at that time; and that the payment of these assets, in discharge of other debts, does not prevent this legal consequence. If the debt be once extinguished, it is urged that no act of Patton could revive it. He could not make a contract with himself, nor could he, by any agreement with the devisees, renew the old obligation.
It will be observed, that all the decisions referred to were made in suits prosecuted by executors or their legal representatives, to recover debts which, as executors, they had a right to retain.
That in such cases the right of action is gone, cannot be disputed. The executor cannot sue himself, and for this reason he is authorized to rotain the amount of his debt out of the assets in his hands. The right of action, being once extinguished, cannot be revived either by the executor or his legal representatives. On this point the authorities are decisive: and, although some difference of opinion seems to have been entertained as to the extinguishment of the debt, yet it is in effect extinguished, as the legal right to enforce the payment of it is gone. On this principle were the adjudications made which have been cited. The question under consideration does not arise on a suit prosecuted by Patton for the recovery of his debt. If it did, the application and force of the *314 authorities would be conclusive. In such a case his debt would be considered as extinguished, by the extinguishment of the right of action.
Patton, as administrator, having received personal assets, instead of paying his own debt pays others of equal or inferior dignity; and the question is presented, whether by doing so, he has forfeited his claim. It is not in proof that at any one time he had in his hands money enough from the personal estate to discharge his debt. As before remarked, he sold the personal property, generally, on a credit of twelve months.
He seems to have preferred realizing the interest, annually, upon his own demand; knowing that it was secured by a lien on the real estate. He postponed the payment of the whole, or a part of this debt, until the realty was sold, and discharged it out of the proceeds of such sale.
Is there any principle of law which will apply this payment, as a credit to the administration account; or that will consider the fund to have been withdrawn from the administrator?
The law presumes his own debt to be satisfied when assets come to his hands to the amount of it, there being no other debts of higher degree. But may not this presumption be rebutted by an application of the money in the payment of other debts. This seems to have been done by Patton. In the maintenance and education of the children, and in payment of other debts than his own, he applied the personal assets.
If the doctrine contended for be correct, that it was not in the power of Patton to wave the operation of law, by which his own debt would be discharged so soon as assets of sufficient amount came into hands; it would seem to follow, that having applied the assets to other purposes, his own debt becomes forfeited, and the right of retainer completely extinguished. The argument does not stop short of this consequence.
Under this view of the case, to destroy the right of retainer in the administrator it is only necessary to show that he had in his possession legal assets sufficient to pay his debt, and that there were no other debts due by the estate of higher dignity. These facts being established, if the principle be correct, as effectually destroy the existence of the debt and the *315 right of retainer, as if the debt had been paid. It can be of no importance how the legal assets were applied. Being in the hands of the administrator, the law applies them in discharge of his debt, it is contended, in defiance of his own acts and intentions: if this be not the case, if the administrator may postpone the payment of his own debt, a day or a month, and give a preference in payments to other demands, he may extend the time at his discretion: and if he may discharge his own debt, after paying other debts of equal amount and of no higher degree, out of the legal assets, he may continue to give the preference to other claims, and eventually discharge his debt out of any moneys which may come into his hands as representative of the estate.
Is the debt paid so soon as the legal assets shall come to the hands of the administrator?
That the right of action is gone, is admitted; because a man cannot sue himself: and this right being once extinguished cannot be renewed.
This rule is founded on reason and justice, and is well established by repeated adjudications. But, can the principle be extended so as to extinguish the right of retainer where assets equal to the debt have been received and applied in the payment of other demands? Such a rule would be contrary to reason and justice, and is not believed to be law.
The language used in some of the decisions referred to would seem to favor the construction contended for by the defendant's counsel; but the point presented in all the cases was, whether the action could be sustained. The right of the administrator to retain the money in his hands, for the discharge of his own debt, is as unquestionable as if it had been paid to him on executions. It is his own, and he may retain it as such. This is the case put by some of the judges in illustration of the principle: but it is no where said that a waiver of this right is an abandonment of it.
Lord Hardwicke in 2 Atkyns, 411, says, "If the executor happen to be a bond creditor himself, the court never direct that if any sums come into his hands he should, from time to time, by piecemeal, discharge the principal and interest of his own debt; for he may first discharge all other demands before his own and unless it appear that a considerable sum was *316 left in his hands sufficient to pay off his bond entirely, over and above what was due upon other demands, there could be no ground for the exception taken." The principle is here stated correctly, and applies to the question under consideration.
That an administrator or executor may retain the amount of his debt out of the assets in his hands, is a principle which grew out of the necessity of the case. If such a right did not exist, the executor or administrator would be, in many cases, without remedy. The principle was intended for his benefit, and not to mislead or entrap him.
It is a right which he may postpone, if in doing so he does no injury to the estate; and such a question can only be made by the devisees or their heirs. If he shall pay debts, not on interest, and permit his own to run on interest, it may become a question whether he be entitled to interest. But his right to pay himself, so long as assets shall remain in his hands, is clear.
The moneys arising from the sale of the Mansfield estate were applied in payment of debts under the orders of the court of chancery. The decree in 1811 directed Robert Patton and others to be paid "in the order of priorities of their liens." These, and other facts, connected with it show that the debt due on the deed of trust was referred to which constituted a lien on the estate.
In the year 1812, Patton reported to the court that he had retained out of the moneys in his hands as receiver, the balance due to him. This payment was sanctioned by the court.
It appears then that a court of chancery has sanctioned the payments which have given rise to this controversy. On a full investigation of the administration account, they direct the payments to be made out of the equitable fund. Had that court considered the claim of Patton as satisfied, by failing to apply in its discharge the moneys arising from the sale of the personal property, the payments would not have been decreed.
Debts to a large amount were paid out of the proceeds of the real estate, under the sanction of the court. Must these, as well as Patton's debt, be credited to the administration fund? Was Patton obliged to pay his own debt? Was he not at liberty to release it? And if he had done so, could there *317 have been any just ground of complaint by his sureties? Is not their complaint, as now made, equally groundless?
Patton has received payment of a part or the whole of his deed of trust, out of the equitable assets, under the decree of a court of chancery. This payment cannot be transferred to the administration fund, and entered as a credit to the administrator; nor is the administrator, under the circumstances of the case, entitled to a credit on any other principle, for the amount. It should be credited to the fund out of which the payment was made.
Mr Justice JOHNSON dissenting.
As I understand the decision just delivered, it affirms a principle to which I certainly cannot yield my assent.
As the will charges the real estate as well with the maintenance and education of the children as the payment of debts, and there does not appear to have been at any time in the administrator's hands a sum sufficient to pay off his whole debt; I am satisfied that it is not a case of extinguishment: and that the payments made to the maintenance and education of the children, and the satisfaction of debts of an inferior order, are not to be imputed to the administrator as payments upon his own bond. They were voluntary payments, it is true, but they were made in pursuance of the will. But as to all other sums arising out of the personalty, and which were not applied to either of those purposes, but in fact sunk and wasted in the administrator's hands, I am clearly of the opinion that they are to be imputed to him as payments on his own bond; and that pro tanto, he could not be permitted to apply the proceeds of the real estate to the satisfaction of his debt; it was in fact a repayment on a debt which he knew to be satisfied.
And as to the amount paid, respectively, to the maintenance and education of the children, having an interest in the proceeds of the realty; I have no idea that they can be permitted to come upon the sureties of the administrator, for the amount so paid on their account. Indeed, upon the whole, it appears to me to be one of those cases of common misfortune in which the court ought to leave the parties as it finds them. If the personal assets were in fact in existence, it would be a different case; and there might be an equity in the heirs now to *318 come upon the assets for indemnity; supposing that they might originally have compelled the administrator to apply the personalty in relief of the real estate. But when the assets are in fact wasted, I cannot conceive that a court of equity would ever compel the sureties to pay up the administration bond for the relief of the heirs. Their liability is legally confined to the demands of creditors and distributees alone: and I can see no equity in subjecting them directly or indirectly to the general equity of the heirs, in stretching that liability beyond its strict legal limits.
Mr Justice BALDWIN also dissented from the judgment and opinion of the court.
This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of Virginia, and on the points and questions on which the judges of the said circuit court were opposed in opinion, and which were certified to this court for its opinion in pursuance of the act of congress for that purpose made and provided; and was argued by counsel: on consideration whereof, it is the opinion of this court that the debt of Patton, or such portion of it as was paid out of the proceeds of the sale of the real estate, should be credited to that fund, and not to his account of the administration fund. Whereupon it is ordered and adjudged by this court, that it be certified to the judges of the said circuit court that the debt of Patton, or such portion of it as was paid out of the proceeds of the sale of the real estate, should be credited to that fund, and not to his account of the administration fund.