Turney v. Chamberlain.

NANCY J. TURNEY, Plaintiff in Error, *v.* TIMOTHY CHAMBERLAIN, Defendant in Error.

ERROR TO SCOTT.

Adverse possession, sufficient to defeat the legal title, must be hostile in its inception, and continued uninterruptedly for twenty years.

Such possession must be actual, visible, and exclusive, acquired and retained under claim of title inconsistent with that of the true owner. It need not be under a rightful claim or muniment of title.

If entry is not made under a paper title, the possession is considered adverse to that portion only of the premises actually occupied. If entry is made under a conveyance, occupation of a part will be an adverse possession of the whole tract conveyed.

THIS case was originally commenced in Morgan Circuit Court, but was removed to Scott County by change of venue. It was tried at October term, 1853, before WOODSON, Judge.

M. McCONNEL and W. A. TURNEY, for plaintiff in error.

D. A. SMITH and W. BROWN, for defendant in error.

TREAT, C. J. This was an action of ejectment brought by Turney against Chamberlain, on the 20th of February, 1852, to recover the possession of lot one hundred and sixty, in the town of Jacksonville.

It was admitted on the trial, that Thomas Arnett was the patentee of the half-quarter section, of which the lot in dispute formed a part; and that the defendant was in the possession of the lot when the suit was commenced. The plaintiff read in evidence a quitclaim deed of the half-quarter section from Arnett to McConnell, dated the 21st of March, 1835, and

recorded the same day; also a quitclaim deed of the same tract from McConnell and wife to the plaintiff, dated the 9th of February, 1852. It was proved by a witness, that Arnett died several years since, and that the plaintiff was one of his heirs at law.

The defendant introduced a deed of the lot in question from Mason and wife to Eleazer Keath, dated the 16th of January, 1832, acknowledged the 24th of March, and recorded the 4th of April, of the same year; also, a deed of the lot from Keath and wife to the defendant, dated the 29th of March, 1847, and recorded the 17th of May following. Both of these deeds contained covenants of warranty. He then read in evidence the depositions of Gabriel Keath and James Whitehurst. Keath stated, that Eleazer Keath built a house on the lot in the spring of 1832, and moved into it during the fall of that year; he occupied the house until the fall of 1833, when he removed to Kentucky; according to the best of his recollection, the materials for the house were upon the lot as early as the 1st of February, 1832; the witness, on behalf of Eleazer Keath, employed Brown to get out the timber for the house early in 1831. Whitehurst stated, that Eleazer Keath told him in January, 1832, that he was going to build a house on the lot; there was then a good deal of lumber on the lot, and Keath was at work upon it; there was no building on the lot, and no fence around it. The defendant then called Brown, McCarley, Patterson, and Ransdell. Brown testified that he hewed the logs for the house during the summer of 1831. McCarley testified, that the logs were hauled by himself and Brown, on or near the lot, in the fall of 1831. Patterson testified, that he had resided on the opposite side of the street to the lot ever since 1830, except during the winter and spring of 1834, when he was absent from the State; that the logs were on the lot previous to the spring of 1832, and Keath erected a log house on the lot during that spring and summer; the brother of the witness moved into the house, and died there the following winter; Keath then occupied the house till the next summer, when he removed to Kentucky; he left a man to attend to his business, and rent the house; the house was occupied by some one under Keath, until the defendant took possession under his purchase in 1845; the lot was inclosed by a post and rail fence in the spring of 1833; Mason lived in the country, and claimed to own the lot, when he sold it to Keath; Keath claimed to be the owner of the lot when the logs were hauled upon it; Mason removed to Tennessee, and died there many years since. Ransdell testified, that the logs were put upon the lot in the fore part of 1832, and

Turney *v.* Chamberlain.

the house was built in the summer following; according to the recollection of the witness, the house was constantly occupied after Keath removed to Kentucky.

The plaintiff then called McConnell, the grantor of the plaintiff, who testified, that there were no improvements on the lot in the spring of 1832, but that house logs were then lying on or near it; the house was built during the summer of that year, and occupied until Keath removed to Kentucky; during the winter and spring of 1834, the house and lot were unoccupied; the witness had often seen the house vacant, and the fence down; Arnett resided in the neighborhood of Jacksonville from the time the improvements were made until his death; the witness was asked why he had not asserted a claim to the lot under his deed from Arnett, and he answered, that he knew nothing about it.

The jury returned a verdict in favor of the defendant, and the court refused to grant a new trial.

The plaintiff, having deduced title from the patentee, was entitled to recover, unless Keath and the defendant held the lot adversely for twenty years before the bringing of the suit. The law on this subject is well settled. To constitute an adverse possession, sufficient to defeat the right of action of the party who has the legal title, the possession must be hostile in its inception, and so continue without interruption for the period of twenty years. It must be an actual, visible, and exclusive possession, acquired and retained under claim of title inconsistent with that of the true owner. It need not, however, be under a rightful claim; nor even under a muniment of title. It is enough that a party takes possession of premises claiming them to be his own; and that he holds the possession for the requisite length of time, with the continual assertion of ownership. If he does not make the entry under a paper title, his possession is considered as adverse only to the portion actually occupied. In such case, he acquires no interest beyond the limits of his inclosure. But where a party enters under a conveyance of a single tract of land, his actual occupancy of a part, with a claim of title to the whole, will inure as an adverse possession of the entire tract; and such occupation and claim, if regularly continued for twenty years, will bar the right of entry of the real owner. In such case, the possession is regarded as coextensive with the description in the deed; and the original entry as a disseisin of the owner to the same extent. Lessee of Clarke *v.* Courtney, 5 Peters, 318; Ellicott *v.* Pearl, 10 Ib. 412; Jackson *v.* Woodruff, 1 Cowen, 276; Jackson *v.* Halstead, 5 Ib. 217; Jackson *v.* Oltz, 8 Wend. 440; Jackson *v.*

Warford, 7 Ib. 62; Humbut v. Trinity Church, 24 Ib. 587; Noyes v. Dyer, 25 Maine, 468; Bailey v. Carleton, 12 New Hamp. 9; Crowell v. Beebee, 10 Ver. 33; Davis v. Easley, 13 Ill. 192.

In the present case, we think the evidence warranted the conclusion, that Keath and the defendant were in the adverse possession of the lot for twenty years prior to the commencement of the action. It is evident that Keath entered upon the lot before the 20th of February, 1832. He received a conveyance of the lot in January of that year, and avowed his purpose of erecting a house thereon. He had previously procured the materials, and had them delivered on the lot. His entry was coextensive with the description in the deed. It was also clearly hostile to the title of Arnett. He claimed the lot as the grantee of Mason, and not as the tenant of Arnett. Neither his possession, nor that of the defendant, was subservient to the title of Arnett or his assignee. The possession of Keath was also visible and exclusive. He took all the possession of the lot that the circumstances permitted. The delivery of the building materials, the erection and occupancy of the house, and the inclosure of the entire lot, were unequivocal and connected acts of possession. They clearly indicated that he claimed the lot as his own. They fully apprised Arnett that the lot was in the adverse possession of another. The evidence was indeed contradictory upon the question, whether Keath, by his tenants, continued in the actual possession of the lot, from the time of his removal to Kentucky until the purchase by the defendant. But it was the province of the jury to pass upon this evidence, and we are not prepared to say that their decision was erroneous.

Some exceptions were taken to the giving and refusing of certain instructions; but upon a careful consideration of the instructions, we are satisfied that the court committed no error to the prejudice of the plaintiff.

The judgment is affirmed.

*Judgment affirmed.*