## John C. Stewart

### *v.*

## Catharine V. Duffy.

*Filed at Ottawa January 25, 1886.*

1. LIMITATION—*twenty years' adverse possession.* Twenty years' adverse possession of land under a continuous assertion of ownership hostile to all others, constitutes a bar to any right of entry by one not within any saving clause of the statute, claiming paramount title, whether the claim of the party in possession is rightful or not, or even under a muniment of title.

2. A daughter, under a parol gift of her father, entered into possession of a tract of land in 1856, and continued to occupy the same ever since. Prior to the death of her husband, in 1862 or 1863, the taxes were paid in his name, and after that in her own name, during all which time her nephew, the only other heir, treated the land as belonging to her, and never claimed any interest therein, and when going into bankruptcy did not schedule any interest in the same: *Held*, that not only the nephew was estopped from claiming any interest in the land, but that a purchaser of his assignee was equally concluded, and barred of any right of entry.

3. RELATION OF TRUST AND CONFIDENCE—*of rights acquired thereunder.* Equity will not permit a party to obtain an unconscionable advantage of another whom he has assumed to serve, even though the services he proposes to render would be gratuitously bestowed. If he consents to act through mere friendship, he must do so in good faith, and he will not be allowed to take advantage of or profit by his relation.

4. Where one occupies the relation of a friend and confidential adviser of another, who reposes confidence in his fidelity, a court of equity will not permit the person holding such relation to acquire rights antagonistic to the person he assumes to serve, in property about which he has undertaken to counsel and advise such person.

5. So where the general agent and confidential adviser of a widow lady, who looked after her interests, acquired an adverse title to her land, professedly for her use and benefit, at a price greatly less than its real value, if valid, he will be decreed to convey the same to her on being reimbursed the sum paid by him for it. Before making such purchase he should have told her distinctly that if she did not wish to buy such title he wished to do so for himself. He then might have held the same adversely.

6. REFERENCE TO MASTER—*whether necessary—in order to ascertain the cost of property on declaring a trust, and reimbursing the trustee.* On bill to declare a trust and to require the trustee to convey a title acquired by him to his principal upon being repaid what it cost him, where there is no complication in the matter or difficulty in ascertaining the amount to be paid him, there is no necessity in referring the case to a master to ascertain the cost incurred by him. In such case the court may make the computation itself, if it chooses.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH. Judge, presiding.

Mr. G. W. THOMPSON, and Messrs. LANPHERE & HARRIS, for the appellant:

That appellee has resided on the place twenty years can not avail as a defence, for the reason the Statute of Limitations is not set up by either answer or cross-bill. *Borders* v. *Murphy,* 78 Ill. 81; *Nichols* v. *Padfield,* 77 id. 253; *Vanhook* v. *Whitlock,* 7 Paige, 373; *Dey* v. *Dinham,* 2 Johns. Ch. 182; *School Trustees* v. *Wright,* 12 Ill. 441; Story's Eq. Pl. secs. 484, 760.

Where an heir resides with the ancestor at the time of the death of the latter, it requires clear and satisfactory proof of a subsequent disseizin of a co-heir to characterize such possession as adverse, so as by lapse of time to bar the right of entry of the co-heir. The subsequent possession is not adverse. *Ball* v. *Palmer,* 81 Ill. 371; *Nicoll* v. *Scott,* 90 id. 529; *Dugan* v. *Huston,* 100 id. 582; *Busch* v. *Huston,* 75 id. 347; *Warfield* v. *Lindell,* 38 Mo. 581.

Stewart even brought himself within the strict rule that could have been applied had he been appellee's attorney, and learned all about the adjudication in bankruptcy from her,

and been consulted by her as to the propriety of her buying the interest of Smythe. Story's Eq. Jur. sec. 310; *Gibson* v. *Jeyes*, 6 Ves. 278; *Jones* v. *Thomas*, 2 Y. & Coll. 498.

He was not her attorney and adviser in respect to this matter, and the proofs show he was not.

Under the finding of the circuit court, the case should have been referred to the master in chancery to report the amount. *Steere* v. *Hoagland*, 39 Ill. 264; *Bressler* v. *McCune*, 56 id. 475; *Riner* v. *Touslee*, 62 id. 266; *Groch* v. *Stenger*, 65 id. 481; *Moshier* v. *Norton*, 83 id. 525.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, for the appellee:

Appellant's position towards appellee, and her interests in this matter, was such that he was interested for her, and hence he was prohibited from acquiring rights therein antagonistic to her. The rule applies not only to attorneys and agents, but also to those occupying any position out of which a similar duty ought, in equity and good morals, to arise. Bispham's Principles of Equity, secs. 92, 93, p. 133.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case was exhibited in the circuit court of Knox county, against Catharine V. Duffy, and is for the partition of a certain tract of land described in the bill, and was filed April 20, 1883. Both parties concede the title was originally in Francis McDonough, since deceased. He obtained a patent to the land from the government of the United States in 1817, and never made any conveyance thereof to any one. The theory of complainant's bill is, the original owner died intestate, and that the land therefore passed to his heirs at law by descent. There does not seem to be any very definite evidence in the record as to the time of the death of Francis McDonough, but it is conceded his death occurred as early as 1856. Surviving him was one son, Lawrence McDonough,

one daughter, now Mrs. Catharine V. Duffy, and one grand-son, George B. Smythe, the son of a daughter who had died before her father. Afterwards, Lawrence McDonough died intestate, without ever having been married, and leaving as his only heirs at law, his sister, Mrs. Catharine V. Duffy, and his nephew, George B. Smythe. In that way the bill alleges the title to the whole tract of land vested in Mrs. Catharine V. Duffy and George B. Smythe. Afterwards, George B. Smythe, it seems, became a bankrupt, and such proceedings were had by his assignee that the interest the bankrupt was supposed to have inherited from his grandfather and deceased uncle, was sold to complainant for the sum of fifty dollars, but at his request, the assignee made the con-veyance to M. M. Tilton, who subsequently reconveyed the property to complainant. It is in this way complainant claims to be the owner of one undivided half of the tract of land involved in this litigation. On July 6, 1883, defendant, Mrs. Duffy, filed her answer to the original bill, in which she admitted her father, Francis McDonough, had been the owner of the land in his lifetime, but averred that before his death, in consideration of natural love and affection, he gave the land to her and put her in possession, and from that time she had remained in possession, making improvements as owner, and that during all that time she claimed to be the absolute owner, and therefore she denies that George B. Smythe, the son of her deceased sister, ever inherited any interest in the land, either from his grandfather or from his uncle. Afterwards, defendant filed an amended answer, in which she stated that any and all interest acquired by complainant under the conveyance from the assignee, from the bankrupt, Smythe, were procured in fraud of her rights; that he was her trusted adviser concerning her interest and .title to the premises in question, and to whom she confided all her busi-ness, and hence he is estopped to claim any title to such premises as against her, and that he holds the same as trustee

for her, subject only to be reimbursed for any disbursements and expenses incurred in the matter, which she was ready and willing to repay on receiving a conveyance from complainant. Afterwards, defendant filed a cross-bill, in which she stated the principal facts contained in her original and amended answer, and claimed affirmative relief against complainant, whom she made defendant to her cross-bill. On the final hearing of the cause the court dismissed the original bill for want of equity, and granted relief on the cross-bill of defendant, upon terms fixed by the court in its decree.

There are many equitable considerations in support of the decree, and it is thought it is sufficiently sustained by the evidence to permit it to stand. Twenty years' adverse possession of land under a continuous assertion of ownership hostile to all others, will constitute a bar to any right of entry by one not within any saving clause of the statute, claiming to have paramount title, whether the claim of the party in possession is rightful, or even under a muniment of title. (*Turney* v. *Chamberlain,* 15 Ill. 271; *Kerr* v. *Hitt,* 75 id. 51.) The evidence is quite sufficient to warrant the conclusion defendant was in the adverse possession of the premises for more than twenty years prior to the filing of the bill in this case. It is evident she entered upon the premises as early as 1856, and this bill was not filed until 1883. There is little room to doubt she entered under a parol agreement with her father that he would give her the land, which he did, and enjoined upon her not to sell, but to keep it for a home for herself and family. Since then she has occupied the premises under a claim of ownership, making improvements upon them and asserting that dominion over the property a rightful owner may do. When she first took possession, her husband, Michael Duffy, was living, and resided with her on the premises. Prior to his death, which occurred in 1862 or 1863, the taxes on the entire tract were paid and the receipts taken in the name of the husband. After his death

Mrs. Duffy paid the taxes herself. These facts would seem to bring the case within the provision of the statute that forbids any person to commence an action for the recovery of lands, or make any entry thereon, unless within twenty years after the right to bring such action or make such entry accrued. (Sec. 1, chap. 83, Rev. Stat. 1874.) Here was continuous adverse possession, open and notorious, for nearly thirty years, under claim of ownership, with the superadded fact of payment of taxes during that entire period. There was no one that could have disputed her title, unless it was George B. Smythe, a grand-son of her donor. The evidence is full to the point he always treated the land as belonging to defendant. In the receipt he took for erecting a fence on the premises, which he wrote himself, he referred to the farm as defendant's farm. So in conversation with the neighbors concerning it, he spoke of the farm as the property of defendant, and never attempted to assert any claim to it or to interfere in any way with her possession. It seems he tried to get the neighbors to induce her to sell it,—not a part of it, but the whole of it,—and re-invest the money for her sole benefit. No claim was ever put forth by Smythe to any interest in the land, and when he went into bankruptcy he did not schedule with his assets any interest in this land. Having treated the land as belonging to defendant for more than twenty years, his assignee, or any one claiming under him, is as much estopped by the statute to commence an action for the recovery of the land as Smythe himself would be. Stress is laid on the fact that in borrowing money defendant secured it on the undivided half of the quarter section, as showing she did not claim the entire tract. No great importance need be attached to that fact or circumstance. It did not appear she had any title of record or by inheritance to more than one undivided half, and it may have been, the parties loaning the money did not care to take security upon any part of the land to which it did not appear she

had a perfect title, derived through *mesne* conveyances, from the government or otherwise. That is all very businesslike, and by no means proves she did not claim ownership to the entire tract. There was clearly no error in dismissing the original bill, as was done, for want of equity.

The remaining question is, whether the decree on defendant's cross-bill, giving her affirmative relief, can be sustained. Whether he was her legal adviser in any technical sense or not, it is certain complainant was her trusted and confidential adviser and agent in a good many matters. One witness says he drew leases for her for this land, and her private papers were left in a box in his safe. She often told him that Smythe did not, and never would, claim any interest in the land, and that it was her land. He says he advised, after Smythe went into bankruptcy, to save trouble she had better get an assignee's deed for it, but she insisted it was not necessary, as Smythe claimed no interest whatever in the land. It was known to complainant the land had not been included by the bankrupt in his schedule of assets. When he first wrote to the assignee to buy the land, it was for defendant, and he represented himself as doing it in her interest. In his letter to the assignee he stated to him the land had not been included in his schedule by the bankrupt; that it was in the adverse possession of defendant; that she had said to him Smythe would not make any claim to it, and, as she is advised, that as she had lived some forty years on it, his claim is of no account. He added he would much rather defendant would have the deed, but as she refused, he would pay the amount he had proposed for her,— that is, fifty dollars,—the deed to be made as he should direct. After having entered into negotiations with the assignee in bankruptcy for the obtaining of a deed from him to defendant, as her agent and trusted adviser, he could not himself buy without first disclosing to her his purpose so to

do, and getting a release from her of his obligations to her arising out of that agency. It was by representing to the assignee that she had occupied the premises "some forty years" under claim of ownership, and for that reason any claim Smythe might make would be of "no account," he obtained from the assignee a deed to the property for fifty dollars, that was then known to him to be reasonably worth four thousand dollars. That was bad faith towards defendant, for whom he had assumed to act in the first instance. Equity will not permit a party to obtain an unconscionable advantage of another whom he has assumed to serve, even though the services he proposed to render would be gratuitously bestowed. This court has said, in *McDonald* v. *Fithian*, 1 Gilm. 269: "If he (a party) consents to act in the relation of mere friendship, so far as he acts he must do so in good faith." The relations complainant had assumed towards defendant, no matter how they may be defined, were such he would be prohibited in law from acquiring rights in the property antagonistic to hers, about which he had undertaken to advise and counsel her. He should, in the first place, have disclosed to her, distinctly, if she did not wish to buy the assignee's title, whatever it was, that he wished to do so himself, and would then hold it adversely to her. This he did not do—at least she denies that he did, and the court trying the cause has found in her favor as to the weight of the evidence. While no fraud, or even fraudulent conduct, in fact, may now be imputed to complainant, it seems quite clear his position and relations to defendant were such that he could not rightfully buy the property for himself, and if he obtained any title at all—which it is not conceded he did—he must be treated as having done so for defendant, and that title he will and ought to be required to surrender to her, on being reimbursed for the expenses incurred in that behalf. As the decree does no more than to grant that relief, it is right, and must stand.

It is insisted it was error not to refer the cause to the master, to ascertain the expenses incurred by complainant in procuring the assignee's deed.    That was not necessary. There was no complication about the matter, nor could there be any difficulty in ascertaining the amount.    In such cases the court may, if it chooses to do so, make the computation without referring the cause to the master, and such is the usual practice.

The decree is warranted by the law and the evidence, and will be affirmed. ·

*Decree affirmed.*