# Harold Gillette, Appellant, v. Kramer Motor Car Company, Appellee.

## Gen. No. 15,775.

INFANTS—*when cannot disaffirm sale.* If an infant converts to his own use money of his employer and with it acquires property which a court of equity would impress with a trust, he cannot after selling and delivering such property to his employer be allowed to disaffirm such sale and recover at law the property so acquired and sold.

Replevin. Appeal from the Municipal Court of Chicago; the Hon. Edwin K. Walker, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 3, 1911.

Spencer Ward, for appellant.

Arnd & Arnd, for appellee.

Mr. Justice Smith delivered the opinion of the court.

Appellant, Harold Gillette, by his mother and next friend, commenced this action of replevin against appellee, Kramer Motor Car Company, for an automobile. Appellee set up as a defense property in W. R. Holligan and J. W. Rodgers as Holligan & Co. The cause was tried before the court without a jury. The court found the issues in favor of defendant.

Appellant urges in substance two grounds for reversal of the judgment below: (1) that appellant sold the automobile to Holligan & Co. while a minor, and then disaffirmed the sale sometime afterwards on the ground of infancy; and (2) that the consideration for which the automobile was sold has wholly failed.

It appears from the evidence that appellant in July, 1907, entered the employment of W. R. Holligan & Co., who were engaged in the grain and stock brokerage business in New York and Chicago. Mr. Rodgers of that firm had charge of the Chicago office in which appellant was employed. Appellant was employed first as a board marker, placing market quotations on a blackboard. From this position he was advanced from time to time until he held the trusted position of bookkeeper, cashier, order clerk and margin clerk. His duties as order clerk and margin clerk consisted in receiving orders from customers for the purchase or sale of grain and stocks and entering them in the proper book, and in keeping track of the margins which customers had to their credit and ascertaining wheth-

er they were sufficient for the protection of the purchases and sales, and to report to Mr. Rodgers in case the margins were not sufficient, so that he might call on customers for further margins, if necessary.

In March, 1908, appellant informed Mr. Rodgers that his grandmother, Mrs. E. A. Loomis, desired to trade through Holligan & Co., and an account was opened in her name. She deposited $7128.30 to margin her trades, and this amount was placed to her credit. Up to August 8, 1908, she had made several trades through Holligan & Co. in stocks and grain. At this time appellant opened another account of Mrs. Loomis in Holligan & Co's books under the name of "E. A. Loomis Special." Several trades were thereafter made under each account. These trades were all conducted by appellant, who gave the orders therefor to the representative of the firm on the Chicago Board of Trade or the Stock Exchange. Of these trades the smaller ones were reported to Mr. Rodgers, but the larger ones were concealed from the firm.

In addition to the above accounts, appellant had opened an account on the firm books in the name of his mother, Mrs. Gillette, and appellant made several trades in her name.

The evidence tends to show that appellant kept the books and so manipulated these accounts that their true condition was not shown on the books. It appeared from the books as kept by him that his grandmother had standing to her credit a much larger sum than the actual fact, and that there was always a sufficient amount standing to her credit to margin her trades, while the fact was she had nothing to her credit, or debit balance against her. On many occasions when there was not sufficient money in the cash drawer, appellant went to Rodgers and stated that his grandmother wished to draw money on her account and asked him for a check. In each case Rodgers inquired as to the condition of the account, and whether the account

would justify the proposed payment, and appellant handed to Mr. .Rodgers a margin sheet purporting to show the amount standing to her credit, and Rodgers then signed checks for the amounts requested. Ordinarily the amount of credit shown on the margin sheets ran from $5000 to $7000.

With the moneys received from Holligan & Co. by appellant in the manner above described, appellant opened· an account in his own name with the Corn Exchange National Bank, and deposited in that account from time to time in the aggregate about $2500. With this money he purchased the automobile sought to be recovered in this action.

Later, and in the early part of October, 1908, ·it was discovered that the books kept by Gillette were wrong, and that several trades made by Gillette, some of which had been made several months previously, had not been closed. Mr. Rodgers, on learning of the condition of affairs, called appellant to account for his wrong doing. Appellant admitted the irregularities and the amounts of the losses he had made, and that he had purchased an automobile with a part of the money. After some negotiation as to what could be done to make good the shortage, appellant gave Rodgers a bill of sale for the automobile for $1800 and Rodgers placed it in the charge of appellee as custodian for Holligan & Co.

In our opinion the evidence shows that appellant while acting in a fiduciary relation to his employers, Holligan & Co., deceived them by concealing trades made by him and by manipulating the books of the firm kept by him so as to make them show a larger balance to the credit· of his grandmother, Mrs. Loomis, than the true state of the account showed, in order that he might draw money in her name to which she was not entitled; and further, that having thus fraudulently secured the money of Holligan & Co. he appropriated it

to his own use and purchased the automobile in question. Upon the facts shown in evidence, appellant held the money, and the automobile purchased with the money, as trustee for his employers (Ellsworth v. Miner T. Ames Co., 125 Ill. 223; Weaver v. Fisher, 110 id. 146); and a court of equity would have compelled him to surrender the machine to Holligan & Co. He obtained the money by virtue of his relation of trust and confidence to Holligan & Co., and wrongfully converted it into the automobile. A court of equity would have followed the property and caused it to be restored to Holligan & Co. Stewart v. Duffy, 116 Ill. 47. When appellant transferred the automobile to his employers, he did only what a court of equity would have compelled him to do; for, though an infant, he was liable for his torts and wrong doing. Wilson v. Garrard, 59 Ill. 51; Prescott v. Norris, 32 N. H. 101. Under these circumstances the law will not permit him to disaffirm his conveyance on the ground of infancy. 16 Am. & Eng. Enc. of Law, (2nd ed.), p. 274.

In our opinion the evidence shows a good and valuable consideration for the transfer of the automobile.

The evidence in our opinion sustains the judgment of the trial court. No reversible error appears in the record and the judgment is therefore affirmed.

*Affirmed.*