GRAND TOWER MINING, MANUFACTURING AND TRANSPORTATION CO.

*v.*

NAPOLEON B. GILL *et al.*

*Filed at Mt. Vernon November 13, 1884.*

1. WILL—*want of certainty—as to description of a part of a tract of land reserved.* A testator devised his home farm of two hundred and five acres to his two sons, except sixty acres thereof to be laid out into town lots, without locating the part so reserved, or fixing the dimensions of the lots, or appointing any one to divide the land and lay out the lots. It was *held,* that the clause in the will directing the sixty acres to be laid out into town lots was void for uncertainty, and that such sixty acres so excepted from the devise descended to the testator's heirs as intestate property, and that his two sons, to whom the devise was made, took an undivided interest in the whole tract as tenants in common with the other heirs of the testator, in respect to the unlocated sixty acres.

2. SAME—*error in probating will—effect thereof collaterally.* If the county court errs in admitting a will to probate on insufficient evidence, its judgment will nevertheless not be a nullity, but will stand until set aside or vacated in some mode known to the law.

3. EVIDENCE—*new record of will, after destruction of original and the record by fire.* An original will and the record of its probate were destroyed

by fire, and a commission, in 1843, under a special act of the legislature, was appointed, before whom proceedings were had to take proof of the will and make a record thereof. The commission found a copy of the will to be such, and ordered it to be recorded. The copy had only one attesting witness. It was *held,* that the record was admissible in evidence, the presumption being that the court, as well as the commission, had sufficient evidence to justify their action.

4. SAME—*sufficiency of evidence to show title—possession, merely.* In a proceeding for partition of land, a minor, by her next friend, appeared and interpleaded, claiming title to two lots of the tract, the only proof of title being the testimony of a witness that he knew her father, who claimed the two lots, and was in possession thereof at the time of his death. There was no proof showing how or under whom he acquired possession,—whether from the defendant, or not: *Held,* that the evidence was not sufficient to show title in the interpleading minor.

5. SAME—*claiming title from common source—of the proof required.* Where both parties claim title from a common source, it will not be necessary for either to prove title in the person under whom they all claim, in a proceeding for partition. A party will not be heard to dispute the title of one under whom he has acquired possession and all the title he claims.

6. CONVEYANCE—*a deed construed as to exception or reservation.* A testator died seized of a farm of two hundred and five acres, having devised the same to his two sons, except an unlocated sixty acres to be laid off into town lots, which exception was void for uncertainty. He left, also, four daughters. One of the sons having acquired the interest of his brother and that of two of his sisters, the other two having died leaving heirs, conveyed the farm, by warranty deed, to a third person, with this exception: "Except twenty acres, which is reserved to satisfy the claim or claims which the heirs of A, a daughter and one of the heirs of G., (the testator,) and also D, son and only heir of C, who was also a daughter and one of the heirs of G.," etc.: *Held,* that the intention was to convey the entire interest in the farm except in sixty acres thereof, and as to that, to pass the undivided two-thirds thereof only,—in other words, to except the undivided interest of the grantor's two deceased sisters therein.

7. SAME—*acknowledgment of deeds in another State—official character of the person taking it—how shown.* A deed for an interest in land in this State was executed by parties resident of another State, and acknowledged by them before a justice of the peace in such other State. The county clerk of the proper county, in his certificate of the official character of the justice of the peace, failed to certify that he himself was the clerk of a court of record: *Held,* that was not required, and that the deed was admissible in evidence without being so certified.

8. Section 20, chapter 30, of the Revised Statutes of 1874, relating to conveyances, provides that where a deed is acknowledged or proved before a

justice of the peace of another State, there shall be added a certificate of the "proper clerk," under the seal of his office, of the official character of such justice of the peace. The "proper clerk" in such section is the one in whose office the evidence of the official character of justices of the peace are kept and preserved by law, and he is not required to certify that he is a clerk of a court of record.

9. SAME—*identity of grantor signing and acknowledging.* In the body of a deed, one of the grantors was described as Robert P. McClintock, and the deed was signed "R. Parker McClintock." The certificate of acknowledgment showed that Robert P. McClintock acknowledged the deed: *Held,* that this was sufficient to show he and R. Parker McClintock were one and the same person.

10. INURING OF TITLE—*under deeds purporting to convey the whole or only part of an estate.* If a person attempts to convey the entire estate in a tract of land by warranty deed, not having a certain interest therein, and he afterward acquires the same, it will pass immediately to his grantee. A title is created by estoppel when a person not having an estate at the time of his grant with warranty, afterward acquires the same. In such case the after acquired title or estate inures, by way of estoppel, in favor of his covenantee.

11. But where one conveys a tract of land except an undivided twenty acres thereof reserved for certain of the heirs of his ancestor entitled thereto, his warranty of the title will be limited to the estate granted, and he may afterward acquire the title of such heirs, and assert the same against his grantee; and it will not inure to the benefit of such grantee by way of estoppel.

12. PARTIES—*in partition—and of making new parties.* In a proceeding for the partition of land, all persons having an interest are necessary parties, either as plaintiffs or defendants; and as the court is required to find and declare the interests of all the parties, it is not material whether a new party is brought into the case as a plaintiff or defendant.

13. So there is no error in allowing an amendment in a proceeding for the partition of land by joining a new party as a petitioner. In such case it is not necessary that he shall become a party by answer and interpleader.

14. ADVERSE POSSESSION—*whether so regarded.* Where one of several tenants in common conveys land, excepting and reserving the interest of his co-tenants, and the grantee takes possession of the whole under an agreement with the grantor to pay the taxes for and on behalf of the co-tenants, such possession, without a subsequent ouster or disseizin, can not be regarded as adverse to them, and the purchaser can not invoke the Limitation law to defeat the assertion of their rights.

APPEAL from the Circuit Court of Jackson county; the Hon. D. M. BROWNING, Judge, presiding.

This was a petition filed by Napoleon B. Gill, against the Grand Tower Mining, Manufacturing and Transportation Company and others, on July 22, 1873, for the partition of the following lands in Jackson county, Illinois, viz.: fractional section 23, containing $40\frac{74}{100}$ acres, and the north-west quarter of section 24, all in township 10, south, range 4, west, the latter tract containing $164\frac{20}{100}$ acres. Under leave of court, the petitioner, on April 25, 1881, filed an amended petition, in which James Riley McClintock was joined as a co-petitioner. By such amended petition it was alleged, in substance, that Napoleon B. Gill and James Riley McClintock, together with the appellant, George W. Creath, David Ray, John Ray, William Ray, Joseph Ray, Mrs. Marshall, (whose given name and address were unknown,) and various other persons whose names and interests were unknown, and the unknown heirs, etc., of such persons, were the owners in fee, as tenants in common, of unequal parts of the premises; that the lands were patented to one James Gill in 1817, and were devised by him by his last will, dated in 1827, to George W. Gill, and Napoleon B. Gill, the petitioner, with the exception of sixty acres of said land set apart and directed by the said testator, in his will, to be laid off into town lots, and disposed of as therein directed; that the said sixty acres so excepted was not specifically set apart or designated in said will by metes and bounds, or otherwise than by the words, "It is my will that sixty acres of the place that I now reside on, be laid off in town lots;" that the sixty acres so reserved was never laid off into town lots, nor even definitely located or ascertained by metes and bounds, by the testator in his lifetime, or by his executors after his death, but descended in equal parts to the testator's six children,—George W. and Eliza Elvira, by his first wife, and Narcena Emeline, Napoleon B., Maria Louisa, and Nancy Louisiana, by his second wife, Sarah Gill, who survived him; that Eliza Elvira was afterwards married to Nathaniel B. Smith, Narcena E. to Rial

P. McClintock, and Maria Louisa to Ferdinand Gottschalk, while Nancy Louisiana died in 1844, a *feme sole*, and without issue; that Napoleon B. Gill, one of the petitioners, acquired by purchase and conveyance the interests of all his brothers and sisters, with the exception of the shares of said Narcena Emeline McClintock and said Nancy Louisiana Gill, in said sixty acres reserved as aforesaid, their interests being each one-sixth part of said sixty acres; that on September 17, 1845, said Napoleon B. Gill conveyed to Herod M. Jenkins, by warranty deed, said tracts of land, "except twenty acres reserved to satisfy the claim or claims which the heirs of Nancy Louisiana Gill, one of the heirs of said James Gill, and also the claim of Cyrus Theodore McClintock, son and only heir of Narcena Emeline McClintock, who was also a daughter and one of the heirs of said James Gill, the patentee of said land, and also excepting one lot that was devised by will of said James Gill to Cynthia Hurst;" that afterwards, on November 28, 1865, Thomas W. Jenkins and wife, (he being the son and only heir of said Herod M. Jenkins, then deceased,) conveyed said land to the Mt. Carbon Coal and Railroad Company, "except twenty acres reserved to satisfy the claim or claims of unknown parties in and to said land to that extent;" that by virtue of said conveyance, said company became the owner of all said land except twenty acres, being the shares of said Narcena Emeline and Nancy Louisiana, aforesaid; that afterwards the corporate name of said Mt. Carbon Coal and Railroad Company was changed, and that company became incorporated by the name of the Grand Tower Mining, Manufacturing and Transportation Company, and that said company, by deed made March 7, 1872, surrendered to Charles N. Talbot and Josiah O. Low, as trustees, the interest of said company in said land, in trust, etc. It was further alleged, that said Napoleon B. Gill is now the owner in fee simple of nine undivided one-tenth parts of the interest or share of Nancy Louisiana Gill in said twenty acres of land, showing

35—111 ILL.

the manner in which he acquired the same. The amended petition set out the other interests, so far as known. By an amended supplemental petition it was alleged that the petitioner had acquired the interest of one of the heirs of Narcena E. McClintock after the commencement of the suit. The amended bill required the defendants to answer under oath.

On May 7, 1881, the defendants moved to strike from the files the amended and supplemental petitions, for various reasons, which motion was overruled at the December term, 1881, and a rule entered requiring the defendants to answer said petitions by a day named. The Grand Tower Mining, Manufacturing and Transportation Company filed its demurrer to the amended petition, and also filed the answer and interpleader of Mary Olyphant, by John Stephens, Jr., her next friend, in a case entitled "Napoleon B. Gill *v.* Grand Tower Mining, Manufacturing and Transportation Company *et al.*"

On September 7, 1882, the default of all the defendants except the Grand Tower Mining, Manufacturing and Transportation Company was entered as to the amended petition, and the default of all the defendants entered as to the amended supplemental petition, and the court overruled the company's demurrer to the amended petition. The petitioners thereupon entered a motion to strike from the files the answer and interpleader of Mary Olyphant, which the court overruled. The corporation having filed its answer to the amended petition, the petitioners moved to strike the same from the files, for the following reasons, viz: First, because, while said paper purports, on its face, to be the separate answer of the Grand Tower Mining, Manufacturing and Transportation Company to the amended petition "on file herein," it is not signed by the individual members of said company, defendants, respectively; second, because said paper was not sworn to by the individual members of said company, or by any one of them, or by any one; third, because the company has not signed the said paper by its chief officer, nor has the seal of

the corporation been affixed thereto; and fourth, because of impertinent and scandalous matter contained in said paper. The court overruled the motion to strike the answer from the files.

The answer to the amended petition denies that petitioner and James Riley McClintock, together with said company and the other parties made defendants, are the owners in fee simple, as tenants in common, in unequal parts, of the land. It admits there was a deed of conveyance, dated September 7, 1846, made by petitioner Gill to Herod M. Jenkins, of fractional section 23 and the north-west quarter of section 24, and avers that the twenty acres and the one lot reserved in and by said deed were only a reservation, as was the then intention of said Gill, of twenty acres and one lot intended to be within and a part of the sixty acres referred to in said amended petition as sixty acres of said fractional section 23 and said north-west quarter of section 24, which sixty acres it is alleged in said amended petition was set apart and devised by James Gill, in and by his last will, to be. laid off into town lots, to be disposed of as set forth in said will, and was not a reservation of twenty acres out of the whole of said fractional section 23 and north-west quarter of section 24; nor was it intended, nor is it so expressed in said deed, as a reservation for any purpose other than is specified in said deed,—namely, to satisfy the claim or claims of the heirs of Nancy Louisiana Gill and the heirs of Cyrus Theodore McClintock. It denies that the reservation in said deed conferred, or that it was intended to vest or confer, any right, title or claim in respect to any person or estate, other than to secure to the heirs of Nancy Louisiana Gill and the heirs of said Cyrus Theodore McClintock their supposed respective interests and claims in and to the aforesaid sixty acres, if it be shown there was sixty acres of said fractional section 23 and north-west quarter of section 24 set apart to be laid off into town lots, as is alleged in said petition. The answer

admits that the deed from Thomas W. Jenkins and wife to said Mt. Carbon Coal and Railroad Company was made on November 28, 1865, as stated, but avers and insists that the twenty acres so reserved and excepted was the same twenty acres that was intended to be reserved in the deed to Herod M. Jenkins, and the exception was made therein for the same purpose in each of said deeds. The answer denied the making and probate of the supposed will of James Gill, and the devise therein, alleged in the petition, and sets up the bar of the Statute of Limitations of twenty years, commencing with the possession of Herod M. Jenkins, and charges that petitioner had purchased the interests of the heirs for a nominal price, for the purpose of speculation, and not in good faith, and averred the making of very valuable and costly improvements on the land by the respondent. The answer was verified by the attorney of the respondent.

The answer and interpleader of Mary Olyphant states that she is the sole heir and surviving child of Harvard V. Olyphant, deceased, who died intestate on or about October 18, 1875, in possession of and claiming title in fee simple to the real estate described in said answer and interpleader, being "a part and portion of the real estate described in the aforesaid amended petition," and that on said premises so possessed and claimed "there is a commodious dwelling house, and other valuable improvements," and that said minor, "as the sole heir of her said deceased father, claims to be the absolute owner in fee simple of said two lots and premises, and is now, by her said next friend, in the exclusive possession thereof, and holds the same subject only to the dower right therein of Mary L. Olyphant, her mother, who is the surviving widow of the said Harvard V. Olyphant." It is also averred "that her father, before and at the time of filing the petition by the said Napoleon B. Gill, was in the exclusive possession and claimed absolute title to said two lots." The answer and interpleader denies that Napoleon B. Gill is the

owner of said two lots; denies the truth of the allegation that petitioners and the other parties are owners as tenants in common; denies that said land was patented to James Gill, and that he devised the same, and denies, generally, the other material allegations of the amended petition, concluding with a prayer to protect her rights, etc.

The cause was heard on the pleadings and proofs. The court found the material issues for the petitioners, and entered a judgment finding the interests of the several parties, and ordered a partition according to the several interests, as found. At the same term at which this decree was entered, the defendants moved the court to vacate its findings and set aside the judgment and decree for partition, which motion the court overruled, whereupon the Grand Tower Mining, Manufacturing and Transportation Company prayed and perfected an appeal from said findings and judgment for partition, and assigned the following errors:

*First*—In permitting James Riley McClintock to be joined as a co-petitioner in the amended petition and in the supplemental petition, at the instance and request of Napoleon B. Gill.

*Second*—In entering a default against appellant as to said supplemental petition, pending the demurrer thereto, and pending an issue made by the separate answer of the appellant denying the facts alleged in the petition and the amended petition.

*Third*—In admitting as evidence the alleged will of James Gill, and the several deeds and papers, depositions and testimony, to the admission of which objections were made and exceptions taken on behalf of appellant.

*Fourth*—In the findings of the court as to the respective rights and specific interests of the parties in and to the lands described in the pleadings.

*Fifth*—In the judgment and decree of the court in respect to the title and interests of appellant in and to the premises.

*Sixth*—In decreeing a partition of said lands and premises without a previous finding and judicial determination as to the rights and interests of all the parties interested therein.

*Seventh*—In overruling the motion to vacate and set aside the findings, judgment and decree, etc.

Mr. THOMAS G. ALLEN, for the appellant:

The rules of pleading and practice at law control in this proceeding, except so far as modified by the statute in respect to partitions. *Hopkins* v. *Medley*, 97 Ill. 402.

This suit having been brought July 22, 1873, is governed by the statute then in force, and not by the act of 1874. Partition act of 1874, sec. 41.

It was error to permit James Riley McClintock to be made a co-petitioner. He could become a party only by appearance and interpleader. Gross' Stat. chap. 79, sec. 7.

Where a mode of procedure is prescribed it must be strictly pursued. (*Hall* v. *Thode*, 75 Ill. 175.) The Practice act of 1872, in regard to amendments, does not apply.

Proof of alleged title must be made by documentary evidence, or the best accessible evidence. 1 Greenleaf on Evidence, secs. 82-86; 2 id. secs. 309, 331, 553, 555; *Trustees* v. *Givens*, 17 Ill. 256; *Hicks* v. *Chapin*, 67 id. 236.

The record copy of the alleged will of James Gill was not admissible in evidence, it showing but one attesting witness. *Ferguson* v. *Hunter*, 2 Gilm. 661.

When a will is not properly authenticated, it is not admissible, for any purpose, as evidence. *Farrell* v. *Patterson*, 43 Ill. 52.

The statutory requirement as to the proof of a will can not be dispensed with. *Allison* v. *Allison*, 46 Ill. 61.

It is indispensable to a will that it be witnessed and published in the manner prescribed by the statute, and duly admitted to probate. *Harris* v. *Douglas*, 66 Ill. 470; *Dickie* v. *Carter*, 42 id. 385; *Crowley* v. *Crowley*, 80 id. 469.

In the absence of proof of testacy, the fact that the party died intestate is properly presumed. (*Lyon* v. *Kain*, 36 Ill. 368.) If Gill died intestate, it follows there is no proof he directed sixty acres of his land to be laid off into town lots, etc., as is alleged.

Napoleon B. Gill not having half the title he assumed to convey by his warranty deed, his after acquired interest passed to Jenkins and those holding under him.

As to the effect of the covenants of warranty referred to, see *Claycomb* v. *Munger*, 51 Ill. 376; *Weed* v. *Larkin*, 54 id. 489; *Brown* v. *Mentz*, 33 id. 339.

As to the inuring of the subsequent title, see *Jones* v. *King*, 25 Ill. 388; *Gibson's case*, 32 id. 352; *Bybee* v. *Hageman*, 66 id. 519; *Welsh* v. *Sutton*, 79 id. 465; *Van Renssalear* v. *Kennedy*, 11 How. 629; Hurd's Stat. chap. 307, p. 272.

Parol evidence was admissible to explain the ambiguity in the deeds, and to show what claim or claims were referred to. *Doyle* v. *Teas*, 4 Scam. 254; *Barrett* v. *Stow*, 15 Ill. 423; *Myers* v. *Ladd*, 26 id. 417; *Fisher* v. *Quackenbush*, 83 id. 310.

A party is estopped from avoiding the effect of the recitals in deeds he offers in evidence. *Byrne* v. *Morehouse*, 22 Ill. 603; *Rigg* v. *Cook*, 4 Gilm. 351; *Packard* v. *Milmine*, 76 Ill. 454.

The sixty acres being unlocated in a fractional quarter, the deeds attempting to convey the same were void for uncertainty. *Hughes* v. *Streetor*, 24 Ill. 647; *Shackleford* v. *Bailey*, 35 id. 387; *Colcord* v. *Alexander*, 67 id. 581; *Schaumtœffel* v. *Behn*, 77 id. 567; *Smith* v. *Crawford*, 81 id. 296.

The certificate of the clerk to the deed from John McClintock does not show that the officer making it was the clerk of a court of record. *Shepard* v. *Carriel*, 19 Ill. 319.

No evidence was introduced to overcome the objections to the other deeds.

The judgment fails to find the interests of all the parties.

Mr. DANIEL H. BRUSH, for the appellees:

By section 24, chapter 110, of the Revised Statutes, the amendment to the petition was properly allowed.  *Teutonic Life Ins. Co.* v. *Mueller,* 77 Ill. 22;  *Doty* v. *Cotton,* 90 id. 453.

The special act of February 1, 1843, (Laws 1842-3, p. 205,) makes the commissioner's report, when recorded, *prima facie* evidence of the facts therein contained.

Appellant having accepted a deed reserving twenty acres, and having paid nothing for the same, should not be permitted to take and hold that part.

The limitation does not apply, for the reason the possession was not adverse to the true owner.  Angell on Limitations, 401;  *Rigg* v. *Cook,* 4 Gilm. 351;  *Wilson* v. *Watkins,* 3 Pet. 43;  *Jackson* v. *Burton,* 1 Wend. 341;  *Turney* v. *Chamberlain,* 15 Ill. 273;  *McClellan* v. *Kellogg,* 17 id. 504;  *Jackson* v. *Berner,* 48 id. 203;  *Ambrose* v. *Raley,* 58 id. 506.

Counsel also discussed the facts, and the admissibility of the evidence objected to.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

When this case was before us at a former term, (see 92 Ill. 249,) we held that the clause in the will of James Gill directing sixty acres of his home place, known as the "oven farm," or the "devil's oven," to be laid out into town lots, without locating the same, or fixing the dimensions of the lots, or appointing any one to divide the land and lay out the lots, was void for uncertainty, and that such sixty acres being excepted from the devise of the home farm, descended to the testator's heirs at law as intestate estate.  The balance of the farm having been devised to his two sons, George W. and Napoleon B. Gill, they took an undivided interest in the whole tract, as tenants in common, with all the heirs of the testator in respect to the unlocated sixty acres.  George W. and Napoleon B. Gill, on the death of their father took two

distinct interests in the home place. They took, as devisees, one hundred and forty-five acres out of the whole two hundred and five acres, and, each, one-sixth of the remaining sixty acres. Each one of them acquired the right to have set off to him, in severalty, one-sixth of sixty acres of the tract and one-half of the residue.

Napoleon B. Gill having acquired, by conveyances, the interest of his brother, George W. Gill, and the interests of his sisters, Eliza Elvira Smith and Maria Louisa Gottschalk, in the home place, consisting of nearly two hundred and five acres, on September 17, 1845, by his warranty deed, conveyed to Herod M. Jenkins the entire place, with this exception: "Except twenty acres, which is reserved to satisfy the claim or claims which the heirs of Nancy Louisiana Gill, daughter and one of the heirs of James Gill, and also Cyrus Theodore McClintock, son and only heir of Narcena Emeline McClintock, who was also a daughter and one of the heirs of James Gill," etc. From the words of the exception, viewed in the light of the facts then before the minds of the parties, it is evident it was intended by this conveyance to transfer the entire interest in the farm except in sixty acres thereof, and as to that, to pass the undivided two-thirds thereof only,— in other words, it was the intention that the shares or interest which would have belonged to the grantor's two sisters, Narcena Emeline McClintock and Nancy Louisiana Gill, if living, should be excepted from the grant, these interests being one-third, or twenty out of the sixty acres. The covenants of warranty in this deed are to be limited to the estate conveyed, and can not be extended to apply to the part excepted or reserved. It is clear that Napoleon B. Gill conveyed only the interest or estate he at that time had in the farm, which was all the land, except an undivided twenty acres in the same.

On the receipt of his deed, Herod M. Jenkins went into the exclusive possession and occupancy of the entire farm, which continued until his death, in January, 1847. On his death

his son, Thomas W. Jenkins, succeeded to the possession, which he held until November 28, 1865, when he conveyed the same to the Mt. Carbon Coal and Railroad Company,— then the name of the present appellant, the name having, since such conveyance, been changed by an act of the legislature. By these conveyances the appellant became seized of the same estate and interest in the entire farm as Napoleon B. Gill had when he conveyed to Herod M. Jenkins, leaving outstanding the interests of the several heirs of Narcena Emeline McClintock and Nancy Louisiana Gill, deceased, in an undivided twenty acres thereof.

Various objections are made to the proceedings below, as ground for reversal, the most material of which will be noticed.

. The first error assigned is in allowing James Riley McClintock to be joined as a co-petitioner in the amended and supplemental petitions, and it is said, "he could only become a party to the pending suit by his appearance, and answer to the petition, and by asserting his rights, if any he claimed, by way of interpleader." If he has any title or other interest in the premises he is a necessary party, either as a plaintiff or defendant, and it can make no difference to the appellant whether he is made the one or the other. It is made the duty of the court to ascertain and declare the rights, titles and interests of *all* the parties, whether plaintiffs or defendants, and "give such judgment as may be required by the rights of the parties." This being so, it is immaterial to the appellant whether McClintock's interest in the premises be adjudged to him as a plaintiff or a defendant. Aside from this, under the statute allowing amendments and the making of new parties, there was no error in allowing the amendment of the petition by making a new party. Rev. Stat. 1874, chap. 110, sec. 23.

The appellant having acquired all the title it has to the premises through James Gill, and still holding under him alone, can not be heard to dispute that title. James Gill is

shown to be a common source of title, under whom, alone, both parties claim, and this renders it unnecessary to show title in him. The same rule applies to the several convey-ances of the heirs and devisees of James Gill to Napoleon B. Gill, made prior to his deed to Herod M. Jenkins, which was made September 17, 1845. Ever since that date Jenkins, and appellant, after Jenkins' son's deed, have held and en-joyed the undisturbed and undisputed possession and use of the land under the deeds of Gill's heirs. Possession under a deed purporting on its face to convey title to real estate, by a party claiming under the same, is adverse to the party making such deed. Under the circumstances of this case, the heirs· who conveyed to Napoleon B. Gill prior to 1845, and suffered him and his assigns to take and hold peaceable and exclusive possession of the land, are barred by the Stat-ute of Limitations. But even if .they were not, they have never made any claim to the interests they conveyed, and do not now assert any. Having gone into possession ·under the deeds of three of thè heirs of James Gill to Napoleon B. Gill, and under his deed, the appellant can not be heard to say that it has not acquired the title it has so long claimed, while still holding under such deeds.

It is also urged that the court below erred in allowing the record of the will of James Gill in evidence, for the reason, among others, that it does not appear from the evidence that it was attested by two subscribing witnesses. The original will and the record of its probate were destroyed by fire. Under the special act of February 1, 1843, (Laws 1842-3, page 205,) to provide for the restoration of records destroyed by the fire, a commission was appointed, before whom pro-ceedings were taken to prove this will and make a record thereof. The board of commissioners accepted the proof offered before it, as sufficient, and ordered the paper pre-sented to it, purporting to be a copy of such will, to be re-corded. This record shows only one attesting witness to the

copy, and this, it is claimed, invalidates the finding of the commission, and renders the record of such finding inadmissible in evidence. We can not accede to this view. It must be presumed that the court, in admitting this will to probate, and the board of commissioners, proceeded according to law, and acted upon proper and sufficient evidence; and because that evidence is not preserved, this presumption is not overcome. Even had the county court erred in admitting the will to probate on insufficient evidence, its judgment would not be a nullity, but would stand until set aside or vacated in some mode known to the law. But aside from this, it is not perceived how this objection, if allowed, can benefit the appellant. If there were no will, or the record be rejected, then the whole farm, instead of only sixty acres of it, descended to the six heirs of James Gill, and appellant would have to claim the whole under four out of six heirs. Again, the deed of Napoleon B. Gill, under which appellant claims title, expressly excepts and reserves twenty acres out of the tract to satisfy the heirs of the other two deceased daughters, and if no will was ever legally made, these heirs, instead of being entitled to one-third of sixty acres of the land, would have owned one-third of the entire tract. We hold that this objection is unavailing to the appellant.

It is claimed that as Napoleon B. Gill made a warranty deed for the land to Herod M. Jenkins, the title subsequently acquired by him passed to and became vested in the grantee of Jenkins,—the appellant. If Napoleon B. Gill had attempted, in his deed, to convey the entire estate in the land, this would have been the case; but it has been seen that he expressly excepted from his conveyance an undivided twenty acres in the tract. A title is created by estoppel when a person not having an estate at the time of his grant with warranty, afterwards acquires the same. In such case the after acquired title or estate inures, by way of estoppel, in favor of his covenantee. It rests upon the principle that a party will not

be allowed to attack a title the validity of which he has cove-
nanted to maintain.   The covenant of title, here, related only
to the land or estate conveyed, and not to the portion excepted,
and the grantor is under no obligation to maintain the title
to the excepted twenty acres.    -

As to the deeds from the several heirs of Narcena Emeline
Smith and Nancy Louisiana Gill, deceased, for their interests
in the twenty acres reserved, made since the deed of Napo-
leon B. Gill to Jenkins, under which Napoleon B. Gill now
claims title, the appellant may object for any proper cause.
Upon their validity and admissibility as evidence depends
the title of the petitioner Napoleon B. Gill.

The deed from John McClintock and wife to Napoleon B.
Gill, dated October 25, 1871, was acknowledged before a jus-
tice of the peace of Cape Girardeau county, in the State of
Missouri.   The objection made to the introduction in evidence
of this deed is, that the certificate of the clerk of the official
character of the justice of the peace is defective, in failing
to show that he was the "clerk of a court of record,"—and
the case of *Shepard* v. *Carriel,* 19 Ill. 319, is referred to as
sustaining the objection.   That case was decided under sec-
tion 16, chapter 24, of the Revised Statutes of 1845, which
relates to certificates of conformity, and not to the official
character of the justice taking the acknowledgment.   Here,
no attempt was made to show that the deed was executed
and acknowledged in conformity with the laws of Missouri,
where the grantors resided, but the deed was executed and
acknowledged in conformity with the laws of this State, if
the officer taking the acknowledgment was a justice of the
peace.   The second clause of section 20, chapter 30, of the
present revision, provides that if the deed is acknowledged
before a justice of the peace, "there shall be added a certifi-
cate of the proper clerk, under the seal of his office, setting
forth that the person before whom such proof or acknowledg-
ment was made, was a justice of the peace at the time of

making the same." It will be seen that the statute applicable to this case does not require the clerk to show in his certificate that he is a clerk of a court of record. The "proper clerk" is the one in whose office the evidences of the official character of justices of the peace are kept and preserved by law.

Several other deeds were objected to on account of alleged defects in the certificates of acknowledgment, not necessary to be discussed, for the reason that their execution was proved by the testimony of the petitioner Napoleon B. Gill. This obviated any objection that might have existed as to the certificates of acknowledgment. In the deed marked "Exhibit K," dated in October, 1871, Henry McClintock, though named as a grantor, did not execute the same, but he executed and acknowledged another deed, with Washington and Margaret Robinson, to John H. McClintock. In the deed described as "Exhibit K," one of the grantors was described as Robert P. McClintock, and he executed the same by the name R. Parker McClintock. The certificate of acknowledgment shows that Robert P. McClintock acknowledged the same, and this will be sufficient to show that he and R. Parker McClintock were the same person.

It is also urged that the Statute of Limitations is a bar to the title of the petitioners. It may be observed that Herod M. Jenkins, when he received his deed from Napoleon B. Gill, agreed to pay the taxes for and on behalf of the heirs of Narcena Emeline McClintock and Nancy Louisiana Gill, and there is no proof that the possession of this land was at any time adverse and hostile to the claim of the true owner. On the contrary, the proof shows that appellant's (and its grantees') possession was taken subject to the known and recognized exception of twenty acres in other parties, and not in hostility to it. As said in *Rigg* v. *Cook*, 4 Gilm. 351: "Where the possession has been consistent with or in submission to the title of the real owner, nothing but a clear,

unequivocal and notorious disclaimer and disavowal of the title of such owner will render the possession, however long continued, adverse." The Statute of Limitations does not commence to run against one tenant in common in favor of another, until after an ouster or disseizin. *Jenkins et al.* v. *Dalton et al.* 27 Ind. 78.

It is also claimed that the court erred in not finding and declaring the rights of Mary Olyphant, the interpleading minor. The judgment may be regarded as finding no title in her, and in this we see no error, for the reason that there is no sufficient evidence of title in her, even if appellant might assign this for error. The only proof of title in the interpleading minor was the testimony of John Stephens, Jr., that he knew her father, who claimed the two lots in his lifetime, and had possession thereof. There is no proof showing how Olyphant acquired the possession, or of whom. For aught that appears, Olyphant may have acquired possession of his two lots of the appellant.

Without noticing all the objections made, we think the evidence sustained the findings of the court, and that there is no material error, prejudicial to the appellant, apparent on the record, and consequently the decree below should be affirmed.

*Decree affirmed.*