JESSIE MEACHAM et al.

v.

PRUDENCE BUNTING.

*Filed at Ottawa June 15, 1895.*

1. HUSBAND AND WIFE—*when Statute of Uses will not execute a trust in a wife.* A naked trust in land conveyed to a man for the use and benefit of his wife is not executed by the Statute of Uses while the marriage exists, but the legal title remains in the trustee.

2. CURTESY—*husband's right of in land held by him in trust for wife.* A tenancy by the curtesy initiate was created in a husband where land purchased by him was conveyed to him for the use of his wife in the year 1856 and before curtesy was abolished, no purpose being manifested to exclude him from such right.

3. SAME—*divorce granted to husband does not defeat estate by curtesy.* A divorce obtained by a husband from his wife does not defeat his tenancy by the curtesy initiate, under the Illinois statute.

4. ADVERSE POSSESSION—*possession by tenant for life is not.* Possession of land by a tenant for life is not adverse to the remainderman or reversioner.

5. SAME—*possession of trust lands by trustee is not.* Possession of land by a grantee, as trustee for the use and benefit of his wife, so long as it continues to be held under the deed is not adverse to her, even after he has obtained a divorce from her.

APPEAL from the Circuit Court of Stephenson county; the Hon. JOHN D. CRABTREE, Judge, presiding.

M. STOSKOPF, and H. C. HYDE, for appellants:

The operation of the Statute of Uses upon the trust in this case was stayed during the appellee's coverture, for the purpose of excluding her husband's marital rights, and when she became a *feme sole,* by the divorce, in 1864, the statute at once executed the use in her, and her right of action then accrued. 2 Washburn on Real Prop. (4th ed.) sec. 163, p. 426; Perry on Trusts, (1st ed.) secs. 310, 311; Tyler on Infancy and Coverture, sec. 305; Williams on Real Prop. (6th ed.) sec. 224; *Ayer* v. *Ayer,* 16 Pick. 327.

It seems well settled that in the case of a naked trust for the use of a married woman, the court will look beyond the words of the gift or grant in deciding whether the statute shall be permitted to execute the use or the title shall remain in the trustee.   *Ayer* v. *Ayer*, 16 Pick. 327; *Dean* v. *Long*, 122 Ill. 447.

The divorce, in 1864, destroyed the marital rights of Urban D. Meacham, if any, in the appellee's separate property, and her right of action to recover these premises then accrued.   The divorce was *a vinculo matrimonii*, which was the only kind of divorce authorized by our statutes.   *Clarke* v. *Lott*, 11 Ill. 105; *Kent* v. *McCann*, 52 Ill. App. 305.

H. C. BURCHARD, and J. F. LYON & SON, for appellee:.

The deed gave Urban D. Meacham an estate for life, as tenant by the curtesy initiate.   Curtesy attaches to equitable as well as to legal estate, unless expressly cut off by the language used.   Hill on Trustees, 405; *Richardson* v. *Stodder*, 100 Mass. 528; Tyler on Coverture, sec. 286; 2 Pomeroy's Eq. sec. 990; *Davis* v. *Mason*, 1 Pet. 503.

The intention to exclude the husband must appear distinctly from the terms of the limitation, and a simple gift or settlement "in trust for the use" will not have this effect.   1 Sharswood & Budd's Leading Cases on Real Prop. 271, *et seq.;*   Hill on Trustees, 405.

The intention to create a separate estate must be clearly and unequivocally expressed in order to deprive the husband of his marital rights.   *Cushing* v. *Blake*, 30 N. J. Eq. 689; Hill on Trustees, 405 ; *Stedman* v. *Pulling*, 3 Atk. 423; Tyler on Coverture, sec. 286.

The right of joint possession for their joint lives in the right of the wife became a right of sole possession by Urban D. Meacham for his own life in his own right. *Shortall* v. *Hinckley*, 31 Ill. 219 ; *Rose* v. *Sanderson*, 38 id. 247; *McNeer* v. *McNeer*, 142 id. 388.

. The Married Woman's act of 1861, as his right was vested, did not, and could not, take it away. For like reason the Revised Statutes of 1874, abolishing curtesy and giving dower in lieu thereof, did not affect his vested rights as tenant by curtesy initiate. *Jackson* v. *Jackson*, 144 Ill. 274.

Urban D. Meacham having an estate by curtesy for his life, his possession could not be adverse to the remainder-man or reversioner. *Mettler* v. *Miller*, 129 Ill. 631; 1 Am. & Eng. Ency. of Law, 237.

A husband or trustee in charge of his wife's separate property comes within the rule which prevents a trustee from obtaining any advantage from his management of trust property. His possession is not adverse to her. Hill on Trustees, (3d ed.) 360, note 1; *O'Halloran* v. *Fitzgerald*, 71 Ill. 53.

Proof to sustain adverse possession must not be inferential, but clear and positive. *Jackson* v. *Berner*, 48 Ill. 203 ; *Busch* v. *Huston*, 75 id. 343.

Possession could not be adverse to appellee until the trust was openly disavowed or denied, and such disavowal or denial brought home to the knowledge of appellee. *Reynolds* v. *Sumner*, 126 Ill. 58; *Timmons* v. *Kidwell*, 138 id. 12 ; Newell on Ejectment, sec. 68, p. 759.

No demand is necessary where the parties set up hostile titles, (*Harland* v. *Eastman*, 119 Ill. 22,) or where the relation formerly existing is repudiated or at an end. Newell on Ejectment, 198 ; *McGinnis* v. *Fernandez*, 126 Ill. 228 ; *Secor* v. *Pestana*, 37 id. 525.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Urban D. Meacham and Prudence Geddis were married in 1836. They removed from Wisconsin to Freeport, this State, in 1852, and there lived as husband and wife until 1862. One son born of this marriage in 1836 is still living. On the 29th of November, 1856, the husband purchased of one Sindlinger lots 6 and 7, in block 5, in

Wright & Purinton's addition to the city of Freeport, the deed conveying the same to him "in trust for the use and benefit of Prudence Meacham," then his wife. Both went into possession of the property in 1857, and occupied it as a home until 1862, and the husband continued in possion until his death, in January, 1892. In 1864 he obtained a decree of divorce in the circuit court of Ogle county from his wife, and by a second marriage became the father of a daughter, Jessie, and a son, James. The mother of these children resided with the father on the premises until her death, and the children continued to live with him until he died. By a general devise in his last will their father gave these children the title he then held, if any, to the lots. The former wife also remarried, her present name being Prudence Bunting. In 1893 she brought this action of ejectment in the court below, claiming said property as owner in fee, and making Jessie and James Meacham, with others, defendants. Issue being joined, and a trial by jury, the court directed a verdict for the plaintiff, and entered judgment accordingly. The defendants appeal.

By the pleadings the issue whether plaintiff's right of action was barred by the twenty years statute of limitations is properly raised, and is the controlling question in the case. The parties agree that by the terms of the deed from Sindlinger to Urban D. Meacham the latter became the naked trustee of his wife, Prudence, and that the legal title to the property conveyed would therefore, under the general rule, vest in her by force of the Statute of Uses. It is also conceded that, inasmuch as she was not *sui juris* under the law in force at the time the deed was executed, the title did not immediately vest in her, but was left in her husband for her use. But counsel for appellants say, the statute took effect, and she became seized of the estate in her own right, upon the dissolution of the marriage, in 1864, and from that time the possession of the husband was adverse, and therefore the stat-

ute then ran against her. On behalf of the appellee it is contended, that even if the legal title did vest in her at the date of the decree of divorce, still, by reason of his marriage and the prior birth of issue, her husband took an estate in the property, upon the execution and delivery of the deed from Sindlinger, as tenant by the curtesy initiate, and hence this right of action did not accrue until his death. Opposing counsel insist that it is held the title does not, in such cases, vest in the *cestui que trust* immediately, for the very purpose of excluding all marital rights of the husband, and therefore Urban D. Meacham never became tenant by the curtesy, and even if he did, the decree of divorce destroyed that as well as all other marital rights in him. Appellee's counsel also deny that Urban D. Meacham's possession was at any time adverse to her.

First, did Urban D. Meacham have a life estate in the premises prior to the divorce? If the Statute of Uses had operated, at the time of the conveyance, to vest the estate in the *cestui que trust*, (the wife,) there being issue then born, the husband would have become tenant by the curtesy initiate, precisely as though the deed from Sindlinger had been directly to her; but being a married woman, the Statute of Uses did not execute the trust, and the legal title remained in her husband, the trustee, for her use. (*Dean* v. *Long*, 122 Ill. 447, citing Perry on Trusts, sec. 310.) This author says: "If an estate be given to trustees upon a trust for a married woman, for her sole and separate use, * * * the legal estate will vest in the trustees, and the statute will not execute it in the *cestui que trust*. In all these cases the court will give this construction to the gift, if possible, for if the statute should execute the estate in the married woman, certain rights would arise to the husband which might defeat the intention of the donor. These are not the only words necessary to prevent the estate from vesting. Any words that show an intent to create

an estate or a trust for the sole and separate use of a married woman will have the same effect." Other authorities are to the same effect, and it seems to be the settled rule that where the trust is expressly *"for the separate use,"* or *"for the sole use and benefit,"* of a married woman, courts will not allow the statute to execute it in her, because the effect might be to let in marital rights of her husband, and thereby deprive her of the sole and separate use, contrary to the intention of the party creating the trust. Nevertheless, it is understood that a husband's right to an estate by the curtesy may attach to an equitable as well as a legal estate held by his wife during coverture, and there can be no doubt that he may have such right in real estate conveyed to another for her use. Whether she holds the property by a direct conveyance, or as the *cestui que trust* therein, if it appears that the grantor intended to exclude the husband from the curtesy, courts will give effect to that intention. (*Pool* v. *Blakie,* 53 Ill. 495; *Monroe* v. *Van Meter,* 100 id. 347.) But the husband can be deprived of his marital rights only when the intention to do so clearly appears. *Carter* v. *Dale,* 3 Lea, 710; (31 A. R. 660); *Cushing* v. *Blake,* 30 N. Y. Eq. 689; Hill on Trusts, 405; *Stedman* v. *Pulling,* 3 Atk. 423.

There is nothing in the language of the deed in question to indicate a purpose on the part of the grantor to convey the property for the *sole and separate use* of Prudence Meacham. In fact, the fair inference is that Sindlinger, the grantor, had no purpose whatever in conveying the lots in trust except to carry out the wish of Meacham, who purchased them. That he, the husband, intended by the words, "in trust for the use and benefit of Prudence Meacham," to exclude himself from all right in the property by the curtesy cannot be presumed, and his conduct after the divorce was wholly inconsistent with any such intention. We think the authorities fully sustain the position that he, at the date of the Sindlinger deed,

became tenant by the curtesy initiate in the premises. Was that estate destroyed by the decree of divorce? While the evidence does not show the grounds upon which it was obtained, it does appear that it was upon the application of the husband, and must therefore have been rendered, not for his fault, but that of the defendant, his wife. While many cases hold "a divorce *a vinculo* destroys the husband's right to curtesy," they speak of such a divorce as at common law, which rendered the marriage void *ab initio*. Although the only divorce known to our law is "*a vinculo*," it may, under the statute, be granted for causes arising after the marriage, and the decree does not avoid it from the beginning. The marriage is legal until dissolved, and we think rights acquired during its legal existence can not be destroyed by its dissolution unless the statute so expressly provides. This view is sustained by the case of *Wait* v. *Wait*, 4 Comst. 95. The New York statute said: "In case of divorce dissolving the marriage contract for the misconduct of the wife she shall not be endowed." The Court of Appeals held, where a divorce was granted for any other cause than the misconduct of the wife she was entitled to dower, and said: "A divorce at common law avoided the marriage *ab initio*. It was equivalent to a sentence of nullity under our statute. It placed the parties in the same relation to each other as though there had been no marriage. \* \* \* Until our statute there was no such thing as a divorce which recognized and admitted the validity of the marriage, and avoided it for causes happening afterwards. Such a divorce is, alone, the creature of the statute. The principles applicable to a common law divorce cannot be made applicable to a divorce which admits the validity of the marriage and the rights and obligations resulting from it. The effect of such a divorce must be determined entirely by the provisions of law under whose authority it is granted. The common law divorce avoided the marriage and all rights and obligations resulting from it.

The statutory divorce is limited in its operation, and only affects the rights and obligations of the parties to the extent declared by statute.   The marriage being valid, the rights it conferred and obligations it imposed continue, where the legislature has failed to interfere. In determining the question before us, therefore, we are to ascertain the will of the legislature,—the intent and effect of the statute under which the divorce in question was granted.   When a divorce is under the statute, the operation of the decree is wholly prospective.   *   *   * If it was the intention of the legislature that in case of a divorce under the statute the wife should in no event be entitled to dower, why not make the provision general, instead of depriving the wife of dower only in case of her being convicted of adultery?  *Expressio unius exclusio alterius."*

When the decree in question was obtained our statute provided:  "If any woman shall be divorced from her husband for the fault or misconduct of such husband, except where the marriage was void from the beginning, she shall not thereby lose her dower nor the benefit of any such jointure, but if such divorce be for her fault or misconduct she shall forfeit the same; and when a divorce is obtained for the fault and misconduct of the husband, he shall lose his right to be tenant by the curtesy in the wife's lands, and also any estate granted therein by the laws of this State."  (Rev. Stat. 1845, chap. 34, sec. 12, title "Dower.")   Certainly it did not take away the husband's right to be tenant by the curtesy in his divorced wife's lands, but clearly shows an intention by the legislature to secure him in that right if the divorce was obtained for causes other than his fault or misconduct. As said in *Wait* v. *Wait, supra,* if the legislature intended that in case of divorce, under the statute, the husband should in no event be entitled to tenancy by the curtesy, why not make the provision general, instead of only in case of the divorce being obtained for his fault?   The

husband's tenancy by the curtesy initiate was not defeated by the decree of divorce in his favor, but terminated only upon his death, and therefore the appellee's right of action did not accrue until he died, in 1893. The possession of land by a tenant for life cannot be adverse to the remainder-man or reversioner. *Mettler* v. *Miller,* 129 Ill. 630, and cases cited.

We are also of opinion that without reference to his tenancy by the curtesy, the possession of Urban D. Meacham was at no time adverse to appellee, within the meaning of the Statute of Limitations. He entered under the Sindlinger deed, and *prima facie* continued to hold possession under it. If the defendants below, claiming under him, denied that fact, the burthen was upon them to prove it, and this they wholly failed to do. Adverse possession sufficient to defeat the legal title must be hostile in its inception, and continue uninterruptedly for twenty years. It must be acquired and retained under claim of title inconsistent with that of the true owner. (*Turney* v. *Chamberlain,* 15 Ill. 271. See, also, *Morse* v. *Seibold,* 147 Ill. 318, and cases cited.) He entered as trustee under the Sindlinger deed, and he could only afterwards claim to hold adversely to that title by surrendering the possession and re-taking it. (*O'Halloran* v. *Fitzgerald,* 71 Ill. 53; *Reynolds* v. *Sumner,* 126 id. 58.) The entry was with appellee's consent, and therefore not adverse. (*Timmons* v. *Kidwell,* 138 Ill. 13.) The possession was consistent with the title of the real owner, and "nothing but a clear, unequivocal and notorious disclaimer and disavowal of the title of such owner would render the possession, however long continued, adverse." *Rigg* v. *Cook,* 4 Gilm. 336, followed by *Transportation Co.* v. *Gill,* 111 Ill. 541.

No other verdict than that which the jury was instructed to return could have been properly rendered in this case.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*