ROBERT A. CLARK *v.* JONATHAN SLAUGHTER et al.

1. CHANCERY : JURISDICTION : DIVORCE.—The Chancery Court has jurisdiction over suits for divorce.
2. HUSBAND AND WIFE : DIVORCE : EFFECT OF, ON SEPARATE ESTATE OF WIFE.—The right to the exclusive use and possession of slaves held by the wife, under the Act of 1839, is vested in her by a decree for a divorce *a vinculo*, without any special provision in the decree for that purpose.

APPEAL from the Chancery Court of Rankin county. Hon. John Watts, chancellor.

*R. A. Clarke*, in proper person,

Cited *Cable* v. *Martin & Bell*, 1 How. 558; *Baines* v. *McGee*, 1 S. & M. 219; *Grand Gulf Bank* v. *Barnes*, 2 Ib. 219; *Knott* v. *Lyon*, 26 Miss. R. 560; *Cameron* v. *Cameron*, 29 Ib. 120; *Hoover* v. *Wells's Admr.*, 33 Ib. 538; 1 Story Eq. 385; 2 Kent Com. 240; Fonbl. Eq. 80; Sug. on Vend. (9th London ed.), 300; 8 B. Monroe, 543.

*W. C. Harper*, for appellee.

HANDY, J., delivered the opinion of the court.

This was a bill filed by the appellant in the Chancery Court of Rankin county, for the purpose of recovering possession of a slave in the possession of one of the defendants, and hire for the use of the slave, with a suggestion that the slave was about to be removed, so as to prevent his recovery of possession, and praying an injunction.

The pleadings appear to be very prolix, and it is needless to state them, in order to a proper presentation of the merits of the case now to be determined. The material facts appearing by the pleadings, and necessary to be taken into view in this appeal, are these:

The slave in controversy was the property of Martha Jane Kirkland and her sister, Malinda Kirkland, jointly, and as such came to the hands of one Alexander, their guardian, in the year 1842. Martha Jane intermarried with the defendant Slaughter, in the year 1845. Alexander purchased the interest of Malinda, and acquired a valid title thereto, and in 1846, obtained a conveyance of the interest of Slaughter and wife, by deed signed by them, but not acknowledged by the wife, and which has been held, in this case on a former appeal, to be insufficient to convey the separate property of the wife in the slave. The slave being in the possession of Alexander after his purchase of the two interests, the appellant purchased from him and obtained possession of the slave, and held it until the slave escaped or was seduced from his possession, and went into the possession of Martha Jane Slaughter.

The answer of Martha Jane Slaughter denies that Alexander ever

rightfully had possession of the slave, so far as her interest was concerned, except as her guardian, and denies all knowledge of, or participation in, the conveyance of her interest to Alexander. It states that Slaughter had abandoned her, and that she had filed a bill in chancery for a divorce ; and prays a sale of the slave and a division of the proceeds between her and the appellant, and an account and payment of hire by him for her interest. It also appears that a decree of divorce *a vinculo* was granted to her in September, 1858, pending this suit and after her answer was filed ; of which due proof was made.

Upon the final hearing, the court decreed a sale of the slave, and an equal division of the proceeds between the appellant and Martha Jane Slaughter, and the hire in the hands of the receiver accrued before the decree of divorce, to be paid to the appellant, and those accrued subsequent to that time, to be paid in equal proportions to him and to Martha Jane Slaughter. And from this decree, this appeal is taken.

The question of the insufficiency of the conveyance alleged to have been executed by Slaughter and wife, to convey the interest of the wife, the same being her separate property, was decided when the case was here on a former occasion ; and it is sufficient to say, in regard to the additional evidence since adduced to render the conveyance binding upon her, or to show that her interest in the slave is concluded by having participated in the sale, and received the benefit of the purchase-money from her husband, that the evidence is insufficient to establish such a conclusion. Neither the receipt of the purchase-money by her, nor the appropriation of it to her exclusive use, is shown, though a very inconsiderable part of it appears to have come to her hands. But it is not sufficiently shown that even this was done with a knowledge on her part of the sale.

But the two main grounds of error insisted upon by the appellant, have reference to the decree divorcing the appellee, Mrs. Slaughter, from her husband. These are, 1st. That the Court of Chancery of Rankin county had not jurisdiction of the subject-matter of the suit for divorce ; and 2d. That, as the decree does not in terms restore the separate interest of the wife in the slave, to her, the hire of the slave belonged to the husband, under the

Act of 1839, relative to the separate property of married women, which right was not affected by the divorce ; and that the appellant succeeding, in virtue of his purchase, to the husband's right, is not accountable to the wife for hire since the divorce.

The first position is entirely untenable. The statute expressly provides that the proceeding for divorce " shall be by *bill in chancery* in the circuit courts." Rev. Code, 335, Art. 18. That is to say, in the courts to which all chancery jurisdiction belonged by the provisions of the Revised Code, which are held by the same officers and at the same place as the circuit court. It is plainly a matter of chancery jurisdiction, and although it was conferred upon the circuit courts, concurrently with the courts of chancery, by the Constitution of 1832, yet it was appropriate to the courts of chancery, and is embraced within the general provisions of the second article of the Revised Code, § 2, p. 540.

The second objection we consider equally untenable. It is true, that the Act of 1839 secures to the husband the control and management of slaves, the separate property of the wife, and the right to the product of their labor ; and it is settled that this right continues to the husband after the death of his wife, and for his life. *Cameron* v. *Cameron*, 29 Miss. 112. But the statute manifestly contemplates, that the right, during the life of the wife, is founded on the continuance of the marriage relation; and whenever that relation is dissolved by divorce, that it must cease; for the main object of the statute was to secure to the wife her separate property; but to give to the husband the usufruct of the property after a divorce from the bonds of matrimony, would be to deprive her of all benefit of her property, and to place it under the control of one who might squander it and entirely deprive her of the means of support, and who had, by his profligacy, forfeited all just right to any benefit of her property. This would not only be a perversion of the main object of the statute, but would have a tendency to promote discontent and unfaithfulness in the marriage relation, leading to divorces, induced by the conduct of profligate husbands, who might be willing to sever that relation if they could retain the use of the property of their injured wives.

The particular provisions of the statute show, that the usufructuary interest of the husband, during the life of the wife, was

intended to accompany the marriage relation, and not to exist when it was dissolved by divorce. For it is provided, that all suits in relation to such slaves shall be prosecuted or defended in the joint names of the husband and wife; and again, that such slaves may be sold by the joint deed of the husband and wife. Hutch. Code, 497, § 4, 5. It cannot be supposed that these acts were intended to be done after divorce; and it is clear, that the continuance of the marriage relation was not contemplated, in order to give the husband any interest in the property during the life of the wife.

The right of the husband under this statute, has been said to be analogous to the right of curtesy in the real estate of the wife. *Cameron* v. *Cameron.* It appears to be clear, that it was not intended to give the husband a greater right than that of curtesy, except where the wife should die during the marriage, leaving no child, and he surviving. Applying the rule to it which applies to the right by curtesy, it ceased with the divorce *a vinculo;* for the rule in such a case is, that all rights consequent upon the marriage are extinguished by the divorce. Shelford on Marr. and Div. 478.

We are, therefore, of opinion, that the effect of the decree of divorce was to restore to the wife her separate property, absolved from any claim of her husband; and hence, that the decree allowing her hire for her interest in the slave from the date of the decree of divorce is correct.

Let the decree be affirmed.