## DOYLE, Appellant, v. ROLWING.

### Division One, November 19, 1901.

1. **Curtesy**: DIVORCE OF WIFE: FOR HER FAULT. Where a wife, possessed in fee simple of land, is divorced for her own fault, and dies leaving children born of the marriage capable of inheriting, he who was her husband is not entitled to curtesy in the land.

2. ———: ———: MARRIAGE. Nor is this holding affected by the fact that he is the innocent party, nor can it be said that it is compelling him to forfeit his estate because another has done wrong. The correct answer is that the obtaining of a divorce was his

own free act, and if it has the effect of destroying his estate by the curtesy initiate, it is not by forfeiture but by voluntary relinquishment.

3. ——: ——: AS AFFECTED BY STATUTE. A divorce puts an end to the husband's right to curtesy in the wife's land, and this result is not affected by the fact that the statute which declares that "in all cases of divorce from the bonds of matrimony the guilty party shall forfeit all rights and claims under and by virtue of the marriage." The rule for the construction of statutes, to-wit, "the exclusion of one is the inclusion of the other," is not applicable, because, before the enactment of that statute the husband's curtesy initiate was, by the common law, cut off by a statutory divorce, and the statute does not create in him an estate which he does not otherwise have.

Appeal from Mississippi Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Boone & Lee* for appellant.

The husband is entitled to curtesy in all lands of which his deceased wife was seized during the coverture, where there were children born alive, as in this case. Curtesy is a marital right, and marital rights are vested rights, and can only be destroyed by the contract, or wrongful act of the person entitled thereto. Leete v. State Bank, 115 Mo. 194; Mitchell v. Violet, 47 S. W. 195; Cooley Const. Lim., 442. A divorce for the fault of the wife does not destroy the husband's right to curtesy. Our statute, declaring the effect of a divorce upon the property rights of the parties, is as follows: "In all cases of divorce from the bonds of matrimony, the guilty party shall forfeit all rights and claims under and by virtue of the marriage." R. S. 1899, sec. 4508. R. S. 1879, sec. 2182, in force at the time the divorce was granted, was exactly the same. In this case the wife was the guilty party. The statute says the guilty party shall forfeit all marital rights, and necessarily

Doyle v. Rolwing.

implies that the innocent party shall not forfeit his marital rights. *Expressio unius est exclusio alterius.* This statute has been so construed in this State, and similar statutes in other states are construed in the same manner. A divorce granted for causes which arose after the marriage, does not work a forfeiture of the husband's curtesy, especially if the wife is the guilty party. Schuster v. Schuster, 93 Mo. 444; Meacham v. Bunting, 41 N. E. 175; Wait v. Wait, 4 N. Y. 95; Howie v. Goings, 13 Ills. 108; Gillespie v. Warford, 2 Cold. (Tenn.) 632; Emmert v. Hays, 89 Ills. 11; Pitts v. Sheriff, 108 Mo. 113; Barrett v. Failing, 111 U. S. 505. Felony and treason by the husband would occasion forfeiture of dower, but no crime of the wife causing a forfeiture of the estate would defeat a previous title in the husband to be tenant by the curtesy. 3 Preston's Abstracts, 385; Hilliard's Abridgment, 51 and 52; 1 Coke's Littleton (1 Am. Ed.), secs. 30 and 32 A; 2 Blackstone's Com., 126 and 127; 4 Kent, 34; 1 Hilliard on Real Property (4 Ed.), p. 119; Smoot v. Lecott, 1 Stewart (Ala.) 590. Now, if the husband did not lose his curtesy at common law by virtue of a divorce for causes arising subsequent to the marriage, then such a divorce, being statutory, has only such effect on his property rights as the statute may declare and no more; but the statute says that the guilty party shall forfeit his marital rights and it must follow that the innocent party does not.

*Russell & Deal* for respondent.

(1) Is a divorced husband entitled to curtesy in his former wife's lands? We insist that he is not. By the common law he had no such right. Gould v. Crow, 57 Mo. 204; Schouler, Dom. Rel. (3 Ed.), sec. 202; 2 Bishop Mar. and Divorce (Ed. 1891), secs. 1643 and 1644; Porter v. Porter, 27 Gratt. 599; Clark v. Slaughter, 38 Miss. 64. (2). There is no statute in this State enlarging the husband's right to

curtesy in such cases. The statute which declares, "The guilty party shall forfeit all rights and claims under and by virtue of the marriage," does not enlarge the rights of any one. Sec. 2929, R. S. 1899. This statute simply to that extent emphasizes the common law already in force. (3) It is questionable if the appellant ever had any curtesy initiate or other marital rights in this land. Where a husband deeds land directly to his wife it becomes her separate property without the formal words so declaring. Turner v. Shaw, 96 Mo. 22; Pitts v. Sheriff, 108 Mo. 115; Dugger v. Dugger, 84 Va. 130. The record in this case shows that this property was purchased and given by Doyle to his wife during their coverture and was prima facie a settlement for the wife, and should for the same reason be her separate property and free from any claim for curtesy. Schuster v. Schuster, 93 Mo. 444. But from our view of this case the judgment of the lower court was clearly right and should be affirmed independently of this question. (4) A husband becomes tenant by curtesy initiate upon the birth of living issue, but can only become tenant by the curtesy consummate by the death of his wife. But if she who was his wife ceased to be such before his death, there is no death of the wife, and hence no curtesy. 2 Bishop Mar. and Div. (Ed. 1891), sec. 1644; Burgess v. Muldoon, 24 L. R. A. 798; Day v. Cochran, 24 Miss. 261; Wheeler v. Hotchkiss, 10 Conn. 225; Rennick v. Rennick, 10 Paige 424; Burt v. Hurlburt, 16 Vt. 292; Cull v. Brown, 5 Black 309; Mattocks v. Stearns, 9 Vt. 326; Cralle v. Cralle, 79 Va. 182; Porter v. Porter, 27 Va. (Gratt.), 599; Hays v. Sanderson, 70 Ky. 489; Hawkins v. Ragsdale, 80 Ky. 353; Moran v. Somes, 154 Mass. 200. (5) We see no reason for any distinction between the principles which govern curtesy and dower, and the rule which we here contend is applicable in cases of curtesy seems to be the almost universally recognized law of dower. A wife is not entitled to dower in her deceased husband's estate where the bonds of matrimony were dissolved prior to his death. Gould

Doyle v. Rolwing.

v. Crow, 57 Mo. 204; 2 Bishop Mar. and Div. (Ed. 1891), secs. 1632 and 1633; Weindel v. Weindel, 126 Mo. 644.   The Missouri statute has changed the common law so as to preserve the right of dower where the divorce is rendered for the fault of the husband.   There is no such statute preserving the right of curtesy.

VALLIANT, J.—This is an action in ejectment. Plaintiff claims an undivided one-twelfth in fee and a life estate as tenant by the curtesy in the rest.   His fee in the one-twelfth is conceded, but his claim of estate by the curtesy is disputed.

The facts are these:   In 1874 and 1878 plaintiff bought the lands in question, and paid for them with his own means, but took the deeds in his wife's name as grantee.   The titles were fee simple.   There were three children born of the marriage capable of inheriting.   In February, 1881, he obtained a decree of divorce for the fault of his wife. After the divorce, the wife, or she who had been the wife, conveyed the land by deed to the three children of the marriage;   defendant holds title under then.   She died in 1890 leaving the plaintiff surviving.   Plaintiff inherited a one-twelfth interest from one of his deceased children.   The defendant holds the fee to eleven-twelfths.

The judgment of the circuit court was for the plaintiff for one-twelfth and the rents and profits appertaining thereto, and for the defendant for the rest.   The plaintiff appeals.

The question of law which the case presents for decision is this:   When a tenant by the curtesy initiate obtains a divorce for the fault of his wife, does his estate continue so that if she dies leaving him surviving the curtesy becomes consummate?

In deciding this question, we find it easier to defer to the weight of authorities than it is to be satisfied with the reason they give.   In 9 Am. and Eng. Ency. Law (2 Ed.), 858, it is said:   "When a marriage is dissolved the husband ceases to

have any interest in his wife's lands by the estate of curtesy, as this estate depends upon coverture and the death of the wife and does not arise upon the death of a divorced wife." Then in a note the author cites the following cases in support of his text: Boykin v. Rain, 28 Ala. 332; Wheeler v. Hotchkiss, 10 Conn. 225; Starr v. Pease, 8 Conn. 541; Townsend v. Griffin, 4 Harr. (Del.) 440; Howey v. Goings, 13 Ill. 95; Doe v. Brown, 5 Blackf. (Ind.) 309; Hays v. Sanderson, 7 Bush (Ky.) 489; Oldham v. Henderson, 5 Dana (Ky.) 254; Wright v. Wright, 2 Md. 429; Barber v. Root, 10 Mass. 260; Moran v. Somes, 154 Mass. 200; Dunham v. Dunham, 128 Mass. 34; Clark v. Slaughter, 38 Miss. 64; Schuster v. Schuster, 93 Mo. 438; Renwick v. Renwick, 10 Paige (N. Y.) 420; Davis v. Davis, 68 N. Car. 180; Blaker v. Cooper, 7 S. & R. (Pa.) 500; McGrath v. Pennsylvania Co., 8 Phila. 113; Sellars v. Davis, 4 Yerg. (Tenn.) 503; Burt v. Hurlburt, 16 Vt. 292; Gould v. Webster, 1 Tyler (Vt.) 409; Mattocks v. Stearns, 9 Vt. 326; Porter v. Porter, 27 Gratt. (Va.) 599.

The Missouri case cited (Schuster v. Schuster, 93 Mo. 438), does not answer the question we have before us, because in that case the divorce was granted at the suit of the wife for the husband's fault, and it was covered by our statute which declares that in case of divorce "the guilty party shall forfeit all rights and claims under and by virtue of the marriage." [Sec. 2929, R. S. 1899.]

But the majority of the courts referred to in the above list sustain the principle as stated in the text, and to the same effect and based on the same reason is another high authority on this subject: 2 Bishop on M. and D., sec. 1644.

An estate by the curtesy is a common-law creation. A divorce a *vinculo* at common law was an annulment of the marriage for a cause that existed before the marriage was entered into; it declared the marriage void *ab initio*. [Blackstone's Com., 435.] It left the parties, so far as their estates dependent on or arising out of the marriage was concerned, as

though no marriage had occurred.    Therefore, we would have
no difficulty in reaching the conclusion that a divorced husband
at common law had no estate by the curtesy.    But the difficulty
arises in attempting to apply the consequences of a divorce,
under the statute, to the common-law estate of curtesy.    A
divorce under the statute for a cause arising after the mar-
riage, puts an end to the marital relation, but it does not relate
back to the act of marriage and render it null.    It recognizes
the marriage as valid and recognizes that rights arise out of it.
It is prospective only in its effect.    In a divorce at common
law there were no marital property rights to be adjusted, for
if the marriage was void from the beginning no property rights
arose out of it, but in a divorce under the statute there are prop-
erty rights to be affected, and the reasons that would lead us
to a clear conclusion if we had only the common law to deal
with, are not so conclusive when we attempt to declare the effect
of a statutory divorce on a common-law estate.    It is said that
there are four essentials to an estate by the curtesy: a valid mar-
riage, seizure of the wife during coverture, birth of a child
capable of inheriting, and death of the wife; and the argument
is that inasmuch as she who was a wife is not a wife after the
divorce, and not a wife when she dies, therefore, one of the
essentials to the estate by the curtesy is missing.    That argu-
ment runs through nearly all of the cases cited above that sus-
tain the proposition that the husband forfeits his estate by the
divorce.    Whilst deferring to the weight of authority, we con-
fess that we do not feel the force of that reasoning.    It adheres
too closely to the letter; it plays upon the word, it sticks in the
bark.    When the essentials to an estate by the curtesy were
defined by Lord COKE he did not have in his mind a modern
statutory divorce; he addressed his definition to the marriage
relation, its incidents and accidents, as contemplated by the
common law; when he used the word wife in that connection it
was descriptive of a woman in the bonds of a legal marriage
which was not liable to be terminated on account of the mis-

conduct of herself or that of her husband. To apply the ancient definition to altered conditions would be equivalent to giving it a force its authors never contemplated.

In 2 Bishop on M. and D., sec. 705, it is said: "But this divorce puts an end to all rights depending on the marriage, and not actually vested; as dower in the wife, curtesy in the husband, and his right to reduce to possession her choses in action." What the law-writer there says is not entirely in accord with views heretofore expressed by this court, for he takes choses in action not reduced to possession out of the category of a husband's vested rights. We have held that a husband had, by the common law, such a vested right in his wife's choses in action as that the legislature could not, by an act subsequent to his marriage, destroy. [Leete v. State Bank, 115 Mo. 194.]

In Porter v. Porter, supra, the Virginia court, in a learned opinion by ANDERSON, J., discuss the effect of a divorce on an estate by the curtesy, and show that the estate of a husband who is tenant by the curtesy initiate is an estate for life in his own right. Quoting from the old English authorities, the court point out the distinction between the estate of the husband in his wife's lands before issue born, when he held only *in jure uxoris,* and that which the law created for him after issue born, which he held by his own right, the one depending on the continuance of the marital relation, the other not; the one liable to be defeated by the act of the wife, the other only by that of the husband. The court in that case further say: "It is more accurate to say that the rights of property of the husband and wife are to be found where the dissolution of the marriage leaves them, than to say that they remain where the law of the marriage placed them." The conclusion of the court was: "But the divorce which breaks the bonds of matrimony, perpetually dissolves the marital relation between them, so that the man ceases forever to be the husband and the woman to be the wife, must necessarily defeat its consummation. It can never

be consummate by the death of the wife."

Lord COKE points out the essential difference in the estate of the husband in his wife's lands before issue born and his estate after that event, the one being that of tenant by right of his wife, she being the one to pay homage to the lord, and the other that of a tenant in his own right of a freehold estate. "And albeit the state be not consummate until the death of the wife; yet the state hath such a beginning after issue had in the life of the wife as is respected in law for divers purposes. First, after issue had, he shall doe homage alone, and is become tenant to the lord. . . . And it is adjudged in 29 E. 3, that the tenant by the curtesie, can not claim by a devise, and waive the state of his tenancy by the curtesie, because, saith the books, the freehold commenced in him before the devise for the term of life." [1 Coke upon Litt., 30a.] Blackstone calls it a vested estate. "As soon, therefore, as any child was born, the father began to have a permanent interest in the lands; he became one of the *pares curtis,* did homage to the lord, and was called tenant by the curtesy *initiate;* and this estate being once vested in him by the birth of the child, was not suffered to determine by the subsequent death or coming of age of the infant." [2 Cooley's Blackstone's Com., 126, 7.] These and other authorities cited by the learned counsel for appellant sustain fully his position that the husband had a vested freehold estate in his own right in the lands in suit. Upon that foundation the appellant bases the proposition that he does not forfeit his estate because another has done wrong. The only answer to that proposition is that the obtaining of the divorce was his own free act and deed and if it has the effect to destroy his estate it is not by forfeiture but by relinquishment. Our statute above quoted declares that in case of divorce the guilty party "shall forfeit all rights and claims under and by virtue of the marriage," and from this it is argued by appellant that the rights of the innocent are to be preserved. But that does not follow. A divorce necessarily destroys rights which the

innocent party had during the marriage, and those rights are surrendered, or voluntarily sacrificed, to obtain the divorce. It is argued that to require the husband, under the circumstances of this case, to surrender his estate by the curtesy in order to obtain the divorce, would be to force him to continue the marriage relation under distressing circumstances in order to preserve the estate; to punish the innocent and reward the guilty. Divorce is a misfortune under any circumstances. It is permitted by law to an innocent party who chooses it rather than continue the greater misfortune. It is a choice between two calamitous conditions. The law does not hope to compensate the innocent party for the family relation destroyed by the conduct of the guilty one; the divorce is granted as affording some relief, but at best it entails suffering and sacrifice on the innocent. If in view of all the consequences the innocent party elects to obtain a divorce, he must be considered as voluntarily relinquishing rights inconsistent with the new condition, whether they be social or property rights. He is to be considered as having elected to stand where, in the language of the Virginia court, the dissolution of the marriage leaves him, rather than where the law of the marriage placed him. [Porter v. Porter, supra.]

Is an estate by the curtesy in a divorced wife's lands consistent with other legal rights that naturally arise and with consequences that may lawfully arise out of the severed marital ties? Suppose the divorced wife, still owning the land in fee, marry another man and have children capable of inheriting by her second marriage. Would her second husband become tenant by the curtesy initiate? And if she should die leaving her former husband and her second husband both surviving her, which of the two would be entitled to the estate for his life by the curtesy? Their respective claims would be totally irreconcilable. When she marries the second time, her second husband takes her and what is hers as completely as if she had never been married before. It would be as inconsistent in the

former husband to claim a lingering interest in her property as it would be to claim a right to her society. The only way to adjust the rights of the parties to the conditions and consequences produced by the divorce, is to hold that the party obtaining the divorce, however innocent, by accepting the condition and in consideration of the amelioration it was hoped would be afforded by it voluntarily surrendered whatever rights he or she had, whether vested or contingent, that arose out of the marriage and the marital relation, the exercise of which would be in conflict with the inevitable consequences of the severed relation. And this must be presumed to have been the intention of the Legislature, since it is a natural result of the statute. Under this view of the law, a wife obtaining a divorce for the misconduct of her husband would forego her right to dower if the statute did not, as it does, expressly preserve it to her. [Sec. 2947, R. S. 1899.] A conflict of estates might result from this section of the statute, because the divorced man might marry again and die leaving his former wife and second wife surviving; then both would be entitled to dower. But as dower is only of one-third, the conflict of estates would not be irreconcilable unless the man left more than three divorced wives or widows surviving, which event the Legislature does not seem to have made provision for.

In Meacham v. Bunting, 156 Ill. 586, it is held that a husband who had obtained a divorce from his wife, presumably for her fault, did not lose his estate by the curtesy in her land. But that decision was founded on a statute of that State which declared that when a divorce was obtained for the fault of the husband, he should lose his estate by the curtesy, and the court construed that as meaning that he should lose it only when he was in fault. That court's interpretation of its own statute does not assist us in this inquiry.

In Tennessee it has been held that a purchaser at execution sale, of a husband's estate of curtesy initiate, acquires a

title that is not affected by the subsequent divorce of the parties. [Ames v. Norman, 4 Sneed 683; Gillespie v. Worford, 2 Coldwell 632.] In the first of those cases, that court holds that, as between the former husband and wife, the divorce puts and end to the estate of curtesy, but as to the purchaser a different rule should prevail. Those cases sustain appellant's contention, but they are not in line with the majority of the decisions in other states on this subject.

The circuit court held that the plaintiff was not entitled to an estate by the curtesy in the lands in question, and its judgment is affirmed. All concur.